653 So.2d 4 (1995)
Lonnie MORRIS, Jr.
v.
EAST BATON ROUGE PARISH SCHOOL BOARD.
No. 93 CA 2396.
Court of Appeal of Louisiana, First Circuit.
March 3, 1995.
*5 Marcus L. Giusti, Hannan, Drake & Giusti, Metairie, for plaintiff-appellant Lonnie Morris, Jr.
Harold J. Adkins, Hammonds & Sills, Baton Rouge, for defendant-appellee East Baton Rouge Parish School Bd.
Before GONZALES, FOGG and PARRO, JJ.
PARRO, Judge.
This is an appeal from a judgment of the Office of Worker's Compensation ("OWC") Administration dismissing an employee's petition to annul a judgment approving a worker's compensation compromise settlement. We reverse, render, and remand.

Facts and Procedural History
Lonnie Morris, Jr. ("Morris") was employed as a maintenance worker by the East Baton Rouge Parish School Board ("School Board") when he sustained a back injury on January 30, 1984. Morris received worker's compensation benefits after the accident, but in 1989, Morris filed a claim with the OWC. Pursuant to this claim, the OWC recommended that Morris be paid temporary, total disability benefits through March 30, 1989 and that supplemental earnings benefits be paid through June 20, 1989. In addition, the OWC recommended that all related medical expenses be paid. Neither Morris nor the School Board sought review of this recommendation by the OWC, and therefore both parties were conclusively presumed to have accepted the recommendation. See former LSA-R.S. 23:1310.1(A).
Discontent with his first attorney's representation in this matter, Morris engaged the services of Archie L. Jefferson ("Jefferson"), an attorney, to represent him in this worker's compensation matter and in any legal malpractice claim he might have had against his first attorney. On April 20, 1990, Morris and Jefferson entered into a contract of employment which provided that Jefferson did not have authority to compromise Morris' worker's compensation claim without his written consent.[1] Approximately one year later on April 30, 1991, a petition for approval of a worker's compensation settlement on behalf of Morris in the amount of $15,000 was filed with the OWC. On May 20, 1991, the OWC approved the compromise settlement. The petition appeared to be signed by Morris, Jefferson and Harold J. Adkins, counsel for the School Board, and appeared to be verified by Morris and Adkins. However, it is undisputed by the parties that Morris did not sign the petition for approval or the related releases. The School Board had previously issued a check payable to Morris and his attorney, Jefferson, in the amount of $15,000 on March 14, 1991. The reverse side of this check appeared to be endorsed by Morris and Jefferson. By stipulation, the School Board admitted that Morris did not endorse the settlement check or receive any of the settlement proceeds.
Upon consulting with a third attorney, Morris learned that his claim for additional worker's compensation benefits had been compromised.[2] On November 18, 1991, Morris filed a petition to annul the judgment approving the compromise settlement. The School Board filed a peremptory exception raising the objection of res judicata which was denied. The merits of this case were presented to the hearing officer on memorandum of each party. Thereafter, the hearing officer rendered a judgment dismissing Morris' petition to annul, with prejudice. Morris appeals from this decision, asserting that it was error for the OWC to refuse to declare its judgment null and void.

*6 Analysis

The salient issue presented in this appeal is whether a party can have a judgment set aside which approves a compromise settlement based on the fraud, misrepresentations, or ill practices of his own attorney.
It is well settled that the worker's compensation law is to be liberally construed in favor of coverage. Smith v. Louisiana Department of Corrections, 93-1305 (La. 2/28/94), 633 So.2d 129, 132. This law contains specific provisions which govern the compromise of claims. The requirements for effecting a compromise settlement of a worker's compensation claim are set out in subsections "A" and "B" of LSA-R.S. 23:1272 as follows:
A. A lump sum or compromise settlement entered into by the parties under R.S. 23:1271 shall be presented to the hearing officer for approval through a petition signed by all parties and verified by the employee or his dependent. The hearing officer shall determine whether the employee or his dependent understands the terms and conditions of the proposed settlement.
B. If the hearing officer finds the settlement agreement to be fair, equitable, and consistent with this Chapter, he shall approve it by order, and the order shall not thereafter be set aside or modified except for fraud or misrepresentation made by any party. The hearing officer may refuse to approve a settlement if he finds that it does not provide substantial justice to all parties.
LSA-R.S. 23:1272 was designed to provide numerous safeguards to prevent an employee from being coerced, to prevent a hasty and possibly ill-advised resolution of the employee's claim, and to protect the parties from unwise actions which may cause them serious detriment. Colbert v. Louisiana State University Dental School, 446 So.2d 1204, 1206 (La.1984); Pepitone v. State Farm Mutual Insurance Company, 346 So.2d 266, 268 (La. App. 4th Cir.1977). In order to protect the parties to the compromise settlement, especially the claimant, this statute mandates that a joint petition be presented to the hearing officer for approval of the proposed settlement. This joint petition must be signed by all parties to the agreement and verified by the employee. LSA-R.S. 23:1272(A).
Once all of the procedural requirements of LSA-R.S. 23:1272(A) have been complied with and an order approving a compromise settlement has been entered by the hearing officer, such an order may be set aside only when there has been fraud or misrepresentation made by any party. LSA-R.S. 23:1272(B). In this case, there was no evidence of fraud or misrepresentation made by the School Board (the employer) or Morris (the employee), the only "parties" to the agreement. See LSA-R.S. 23:1271(B). However, there was sufficient evidence of misrepresentations made by Morris' attorney, Jefferson. Unfortunately, the subject statute was not designed to permit the fraud or misrepresentation of an employee's attorney to be used for the benefit of the employee under such circumstances. Notwithstanding the fact that LSA-R.S. 23:1272(B) does not afford Morris a right to set aside the hearing officer's judgment under the facts of this case, we must determine if Morris is afforded such a right under the general procedural devices found in the Louisiana Code of Civil Procedure. In this regard, Morris has chosen to pursue the nullity action. See Smith v. Cajun Insulation, Inc., 392 So.2d 398, 401 (La. 1980).
LSA-C.C.P. art. 2004 provides for the annulment of a final judgment that has been obtained by fraud or ill practices. Such actions must be filed within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices.[3]Id. In the case sub judice, once the agreement was approved by the hearing officer, it was entered as a judgment of the court and eventually became final. Since there is a final judgment in this case, we must determine if *7 this judgment was obtained by fraud or ill practices. Comment "c" following article 2004 indicates that the legislature did not intend to limit this action to annul to situations involving fraud or ill practices perpetrated solely by an opposing party.
It was apparently stipulated that Morris did not sign his name on the joint petition for approval or on the verification. According to the terms of the employment contract, Jefferson was without authority to compromise this matter without Morris' written consent. The joint petition for approval and the employee verification were prepared, signed, and submitted to the OWC without Morris' knowledge and consent. Although Jefferson may have been of the opinion that the School Board's settlement offer was satisfactory, this belief in no way obligated Morris to accept the offer. See Jasmin v. Gafney, Incorporated, 357 So.2d 539, 540 (La. 1978).[4] Moreover, when Jefferson executed and filed the petition and verification, he no longer had the capacity to represent Morris due to his (Jefferson's) December 14, 1990 suspension from the practice of law. See Articles of Incorporation of the Louisiana State Bar Association, art. IV, § 4.[5]
These actions by Jefferson constituted ill practices perpetrated not only on Morris, but also on the OWC. In fulfilling his obligation to determine whether Morris understood the terms and conditions of the proposed settlement, the hearing officer was misled by Jefferson's misrepresentations contained in these forged documents. Therefore, we Conclude that the judgment approving the compromise settlement was obtained by ill practices. Allowing such a judgment to stand would be unconscionable and inequitable since it would deprive Morris of his legal rights. See LSA-C.C.P. art. 2004, comment (c).
The School Board takes exception to Morris' reliance on LSA-C.C.P. art. 2004 and argues that the subject matter embraced in the instant litigation is specifically addressed by LSA-R.S. 23:1272(B), whereas LSA-C.C.P. art. 2004 is more general. The School Board then notes the jurisprudential rule that when two statutes are in conflict, the statute that is specifically directed to the matter at issue must prevail as an exception to the statute that is more general in character. However, the School Board fails to note the rule of statutory construction which provides that where two statutes deal with the same subject matter, they should first be harmonized, if possible. State ex rel. Bickman v. Dees, 367 So.2d 283, 291 (La.1978); Hayden v. Richland Parish School Board, 554 So.2d 164, 167 (La.App. 2nd Cir.1989), writ denied, 559 So.2d 124 (La.1990). Applying the latter principle, we conclude that these provisions are not in conflict and can be harmonized. In particular, we find that LSA-R.S. 23:1272(B) is limited to fraud or misrepresentation made primarily by the employee or the employer, but LSA-C.C.P. art. 2004 extends to fraud or ill practices by anyone if it leads to a final judgment being obtained by such actions. Therefore, LSA-C.C.P. art. 2004 merely supplements the rights afforded to the employee or employer by LSA-R.S. 23:1272(B) and broadens its scope to prevent an inequity.
Based on the above conclusions, we find that the hearing officer erred in dismissing Morris' petition for an annulment.[6]

*8 Decree

For the foregoing reasons, the OWC's judgment dismissing Morris' petition to annul the judgment approving the compromise settlement is reversed.[7] It is therefore ordered, adjudged and decreed that there be judgment in favor of Morris annulling the May 20, 1991 judgment approving the compromise settlement. In light of our reversal, we remand this case to the hearing officer for a determination of the merits of the School Board's third party demand against Jefferson. Costs of this appeal are assessed to the School Board.
REVERSED, RENDERED, AND REMANDED.
GONZALES, J., concurs with reasons.
GONZALES, Judge, concurring.
I concur with the result reached by the majority, but am of the opinion that the judgment must be set aside due to the ill practices of the hearing officer rather than the ill practices of Archie Jefferson.
In footnote 6, the majority indicates that its resolution of this case based on La.C.C.P. art 2004 makes it unnecessary to decide whether the hearing officer could have effectively determined whether Morris understood the terms and conditions of the proposed settlement without having personally met with him.
Louisiana Revised Statute 23:1272(A) states that in approving a worker's compensation settlement, "[t]he hearing officer shall determine whether the employee or his dependent understands the terms and conditions of the proposed settlement." It is undisputed that Morris did not learn about the settlement of his claim until after it was approved by the hearing officer and the settlement check was cashed. Thus, it is obvious that the hearing officer did not fulfill his duty of determining whether Morris understood the terms of the proposed settlement prior to approving it; if the hearing officer would have complied with Section 1272(A), he would have discovered that Morris was unaware of the proposed settlement and that the signatures contained on the settlement agreement and verification were not made by Morris.
In Smith v. Cajun Insulation, Inc., 392 So.2d 398, 402 (La.1980), the supreme court found that a worker's compensation claimant stated a cause of action for nullity because of ill practices based on the trial judge's failure to discuss the terms of a settlement with the claimant before approving it. Although the Smith court was interpreting a version of Section 1272 which required that the trial court actually "discuss" the settlement with the claimant,[1] rather than the current statute which only requires that the hearing officer "determine" whether the claimant understands the terms of the settlement, I remain of the opinion that this duty of the hearing officer is an "essential requirement of the compromise settlement" which was not fulfilled herein and which constituted ill practices within the meaning of La.C.C.P. art. 2004.
NOTES
[1] Subsequent to the execution of the contract, the Louisiana Supreme Court suspended Jefferson from the practice of law on December 14, 1990; however, Morris was not aware of this fact at any relevant time. See In re Jefferson, 571 So.2d 641 (La.1990).
[2] In light of the conclusive presumption that both parties accepted the recommendation of the OWC, the only matter that could have been the subject of a compromise was the payment of future medical expenses. This observation is confirmed in the brief submitted on behalf of Morris.
[3] Morris' action to annul was timely filed (November 18, 1991) within one year of the judgment (May 20, 1991) as required by article 2004.
[4] In Jasmin v. Gafney, Incorporated, the employee's attorney negotiated a settlement on behalf of the employee. Upon confrontation by his attorney with the necessary papers for his signature, the employee declined the settlement offer. Since the procedural requirements of LSA-R.S. 23:1272 were not complied with, the supreme court found that the employee's worker's compensation claim had not been compromised since the employee had not agreed to any settlement offer. 357 So.2d at 540-41. The supreme court noted that it was of no moment that the employee's attorney found the negotiated settlement satisfactory. Id. at 540.
[5] Article 4, § 4 provides: "No person shall practice law in this State unless he is an active member, in good standing, of this Association."
[6] In light of our resolution of this case based on LSA-C.C.P. art. 2004, we pretermit the issue of whether the hearing officer may effectively determine whether the employee understands the terms and conditions of the proposed settlement without having personally met with the employee.
[7] Due to our holding reversing the judgment of the hearing officer, it is unnecessary to consider the School Board's answer requesting damages for frivolous appeal.
[1] The version of La.R.S. 23:1272 at issue in the Smith case read in pertinent part:

The agreement entered into between the employee or his dependents and the employer or his insurer, shall be presented to the court for its approval upon a joint petition verified by all parties thereto. The judge to whom the petition is presented shall, in every case, discuss the settlement and its terms with the employee or his dependents ... (Emphasis added.)