670 So.2d 1372 (1996)
Roland HARRINGTON, Plaintiff-Appellant,
v.
QUALITY STEEL BUILDING ERECTORS, Defendant-Appellee.
No. 95-822.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1996.
Rehearing Denied April 24, 1996.
*1373 Lawrence N. Curtis, Lafayette, for Roland Harrington.
Dennis Ray Stevens, New Iberia, for Quality Steel Building Erectors.
Before KNOLL, THIBODEAUX, DECUIR, AMY and SULLIVAN, JJ.
KNOLL, Judge.
This appeal focuses on the function of the hearing officer in settlement proceedings and highlights a hearing officer's statutory duty to determine if a proposed settlement is fair, equitable, and provides substantial justice to the parties. The facts of this case center on an unrepresented, functionally illiterate claimant's unsuccessful attempt to set aside a lump sum settlement of his worker's compensation claim. The hearing officer denied the petition of Roland Harrington, finding that the mandatory guidelines for the approval of his settlement were met and that there was no showing of fraud or misrepresentation by his employer, Quality Steel Building Erectors (Quality Steel), and its insurer, Hartford Insurance Company (Hartford).
Mr. Harrington appeals, contending that the hearing officer: (1) erred in concluding that the worker's compensation settlement at issue could only be annulled on the grounds of fraud and misrepresentation; and, (2) in requiring proof of scienter in order to establish that there had been misrepresentation within the meaning of La.R.S. 23:1272. We reverse and remand this matter for further proceedings.

*1374 FACTS
The facts are not disputed. The record shows that on July 19, 1989, Mr. Harrington seriously injured his left knee on the job while working for Quality Steel. Dr. Roland Miller, an orthopedist in Abbeville, performed a diagnostic arthroscopy on August 4, 1989, and verified that Mr. Harrington suffered a complete tear of his anterior cruciate ligament. Dr. Miller presented Mr. Harrington with the option of having surgery to reconstruct the knee or undergoing intensive rehabilitation under the guidance of a physical therapist. Mr. Harrington opted for the rehabilitation.
Dr. Miller examined Mr. Harrington monthly and concluded that as of December 18, 1989, he had reached his maximum level of medical improvement. At that time he assigned him a permanent partial physical impairment of 30% of the left leg as the result of the work injury. In his letter to Hartford, Dr. Miller stated:
I am not recommending surgery at this time. I don't think he is really going to get any improvement for the stability. I do not feel that he is going to be able to return to his prior job. I feel that this is simply going to represent too much of a risk for him for not only reinjury, but a job risk in view of the fact that he would have to be walking on beams and other type of balancing situations as well as climbing.... I feel that he will need to be retrained for another type of job situation that won't involve a lot of standing, walking or climbing. He will see me back on an as need basis, that is if the leg bothers him more or if he starts having more pain in the left knee or if he starts having any instability of the left knee, he will have to see me back again for follow up.
At this juncture, Hartford offered Mr. Harrington $7,500 in settlement of his claim for worker's compensation. Without benefit of legal representation, Mr. Harrington agreed to Hartford's terms and Hartford's attorney prepared a joint petition seeking approval of the worker's compensation settlement. In the joint petition filed with the Office of Worker's Compensation (OWC) on February 7, 1990, the following, inter alia, is represented:
Employee neither desires nor needs any future medical treatment as a result of this accident. Attached hereto are copies of all medical reports.
Employer alleges that if anything was or is due Employee, the amount which has been agreed upon under the terms of the compromise settlement mentioned herein is more than the Employee is entitled to receive in compensation and would receive in the event of a judicial determination of his claim, and believes the compromise proposed hereinafter is in the best interest of the parties.
Employer/Insurer will not be responsible for any future medical care, treatment or expenses.
Employee is not represented by an attorney.
Employee further stated that he was released by his treating physician, Dr. Roland Miller, to return to work.
Hartford and Mr. Harrington signed a verification of the joint petition when it was filed. Although the joint petition was filed in February, the hearing officer did not sign an order approving the settlement until June 22, 1990. In its order, the hearing officer stated:
[T]he Director having been fully informed in the premises, and it appearing that Employee has been fully advised of all his rights under the laws of Louisiana, particulary, but not exclusively, Louisiana workmen's compensation laws being LSA-R.S. 23:1021, et seq. And the other laws of Louisiana and of the United States, and that he understands the terms and conditions of the proposed compromise settlement and that the proposed compromise settlement is fair and equitable and does substantial justice to the parties....
After the joint petition was filed and before the settlement was approved, Mr. Harrington continued to have knee problems and saw Dr. Miller on June 14, 1990. In a letter dated June 14, 1990, from Dr. Miller to Hartford, Dr. Miller stated:
Overall, it appears that he [Mr. Harrington] is beginning to have some functional *1375 instability of the left knee, and I feel that this does merit a change in his [disability] rating. I feel that he does have a permanent partial physical impairment of 60 percent of the left leg as a result of the functional problems that he is having in his left knee. The fact that he has been having problems with his left knee is documented by today's exam. I recommend that he try wearing the knee brace for the present time, but it is extremely awkward in walking when he wears it. This will help give him some stability, but it does appear that functionally he is having more problems with his left knee. It was explained to him that if it continues to give out more and more, then he will have to have surgical reconstruction no matter what, or it will cause significant damage to the left knee, the articular cartilage.
I feel that he has a worsening of his situation and we will need to see him back on an as need basis as this reoccurs.
At the hearing to set aside the settlement, the parties stipulated that Hartford did not receive this correspondence until June 28, 1990, six days after the hearing officer approved of the settlement. The record shows that Hartford's payment for Mr. Harrington's June 14 office visit was received by Dr. Miller on July 13, 1990.
On July 12, 1990, counsel for Hartford sent Mr. Harrington a letter advising him that the $7,500 settlement check had been sent and that he needed to execute the receipt and release. On July 17, 1990, Mr. Harrington picked up the settlement check and signed the receipt and release. Mr. Harrington's deposition shows that before signing the release, he advised Hartford's legal representative that Dr. Miller had doubled his disability rating, but he was told that it was too late to get more money because he had already signed the settlement agreement. In his deposition, Mr. Harrington stated that he understood that he was being paid $7,500 for a 30% disability rating.
Approximately a year later, Mr. Harrington ultimately sought advice of counsel when his knee continued to fail. An action to set aside the settlement was filed with the OWC on July 12, 1991. The record shows that a hearing officer, other than the one who approved the settlement, decided Mr. Harrington's petition to set aside the settlement. After receiving an adverse decision from the hearing officer, this appeal followed.

ANALYSIS
Mr. Harrington first contends that the hearing officer erred in concluding that the settlement could only be annulled on the grounds of fraud and misrepresentation.
La.R.S. 23:1272 provides, in pertinent part:
A. A lump sum or compromise settlement entered into by the parties under R.S. 23:1271 shall be presented to the hearing officer for approval through a petition signed by all parties and verified by the employee or his dependent. The hearing officer shall determine whether the employee or his dependent understands the terms and conditions of the proposed settlement.
B. If the hearing officer finds the settlement agreement to be fair, equitable, and consistent with this Chapter, he shall approve it by order, and the order shall not thereafter be set aside or modified except for fraud or misrepresentation made by any party. The hearing officer may refuse to approve a settlement if he finds that it does not provide substantial justice to all parties.
In Morris v. East Baton Rouge Parish School Board, 93-2396 (La.App. 1 Cir. 3/3/95); 653 So.2d 4, the First Circuit stated:
[La.R.S. 23:1272 was] designed to provide numerous safeguards to prevent an employee from being coerced, to prevent a hasty and possibly ill-advised resolution of the employee's claim, and to protect the parties from unwise actions which may cause them serious detriment.
Morris, 653 So.2d at 6.
Pursuant to the provisions of La.R.S. 23:1271 that reflect the disfavor under the law for lump sum settlements and compromises, and the mandate of La.R.S. 23:1272 that requires the hearing officer to ascertain whether the settlement agreement is fair, equitable and consistent with the societal goals of the worker's compensation legislation, *1376 the OWC promulgated administrative rules to aid it. The request for compromise settlement that Hartford filled out and attached to its petition was provided by OWC. The OWC document specifically stated:
THE PROVISIONS OF LA.R.S. 23:1271 MANDATE THAT LUMP SUM SETTLEMENTS ARE NOT FAVORED UNDER THE LAW. ALL COMPROMISE OR LUMP SUM SETTLEMENT AGREEMENTS ENTERED INTO BY THE PARTIES SHALL BE PRESENTED TO THE DIRECTOR FOR APPROVAL. THE PETITION SHALL SET FORTH THE FOLLOWING INFORMATION.
* * * * * *
(Attachments required: (Rule LWC-23))
(1) Statement of how the compromise settlement will provide substantial justice to all parties including the reason for the compromise settlement and what benefit the injured employee will receive as a result of the compromise settlement.
(2) A memo of agreement signed by the employer, the employee, the insurance carrier, the employee's attorney, if any, the carrier's attorney, if any, and the employer's attorney, if any. If any of the parties are not represented by counsel, the memo should so state.
(3) Detailed affidavit signed by injured employee indicating the employee's understanding of the fact that entering into this settlement operates as a final release of all future liability of the parties.
In Smith v. Cajun Insulation, Inc., 392 So.2d 398 (La.1980),[1] the Louisiana Supreme Court specifically held that the provision that a worker's compensation settlement could only be attacked for fraud or misrepresentation was only applicable when the mandatory guidelines for approval of a compensation settlement were met. When the mandatory guidelines for approval are not met, the Louisiana Supreme Court held that a claimant could bring a nullity action and annul the action for fraud or ill practices. In its opinion the Louisiana Supreme Court stated:
[W]e conclude that the legislature contemplated that no judgment was to be signed unless all the procedural requirements were met and that a judgment obtained in compliance with those sections would be virtually unassailable. The commanding nature of La.R.S. 23:1272 also convinces us that the legislature did not intend that a compromise judgment rendered without compliance with that section could only be attacked when fraud or misrepresentation was present.... [T]he portion of La.R.S. 23:1273 limiting attacks on compensation settlement judgments is only applicable to judgments signed in compliance with ... La.R.S. 23:1272.... In the absence of a statutorily specified method of attacking a compromise settlement judgment for noncompliance with procedural mandates, plaintiff is entitled to rely upon the general procedural devices found in the Code of Civil Procedure, ...
Smith, 392 So.2d at 401.
After carefully reviewing the record and the applicable jurisprudence, we find that the procedural mandates set forth in the revised statutes and the OWC's mandatory requirements for the settlement of this worker's compensation claim were not met. We find the record void of evidence to support the conclusion of the initial hearing officer who approved the settlement that the employee understood the terms and conditions of the proposed settlement, and that the agreement was fair, equitable, and consistent with the Worker's Compensation Act.
We acknowledge from the outset that the legislature's amendment of La.R.S. 23:1272 in 1983 and 1988 overruled cases that invalidated compromises where the district court failed to discuss the compromise with the injured worker. Notwithstanding these amendments, the hearing officer is required to "determine" on a case-by-case basis whether the employee understands the compromise *1377 and is empowered to hold a hearing for that purpose. When we view the record before us, we find that this case was ripe for just such a hearing.
First, we do not find that the allegations of the joint petition drafted by Hartford conform with Dr. Miller's medical assessment of December 18, 1989. Unlike the allegation that Mr. Harrington did not need future medical treatment, Dr. Miller's letter shows that he foresaw no improvement in the stability that Mr. Harrington could expect and that he would have to see him in the future if pain increased or if he experienced knee instability.
Secondly, Dr. Miller's letter of December 18 does not release Mr. Harrington to return to work. The letter expressly states that Mr. Harrington would not be able to return to his former job. At best, the letter states that Mr. Harrington would have to be retrained at another job that did not involve a lot of standing, walking, or climbing. This is a far cry from the allegation of the joint petition.
When we view these obvious variances in light of the six month lapse between the filing of the joint petition and the hearing officer's action on the petition, we find that the hearing officer's limited reliance on stale medical information is indicative that it only perfunctorily examined the documents and falls woefully short of the statutory duty imposed on the hearing officer. These omissions are further heightened when we consider that Mr. Harrington was unrepresented by counsel and was functionally illiterate.
Our assessment in this case of the hearing officer's dereliction is further buttressed when we consider the aforestated rules that the OWC adopted to "help the Director reach a decision" on compromise settlements. In the case sub judice, the hearing officer failed to take notice that the petition for settlement was not in compliance with OWC's mandatory internal rules. The joint petition only refers in conclusionary terms to the manner in which this proposed settlement provides substantial justice to the worker. In addition, the joint petition neither addressed the rehabilitation/retraining referred to by Dr. Miller nor broached the possibility of Mr. Harrington's need for future treatment. Furthermore, the record is void of any affidavit signed by Mr. Harrington that complied with the third requirement that the worker understands that by entering into this settlement, he released Hartford from all future liability.
To a marginally literate or functionally illiterate claimant who is not represented by counsel, the OWC rules are more than academic window dressings and constitute significant elements in the hearing officer's determination of whether the settlement is indeed in the best interest of the injured worker. In situations such as the case sub judice, the role of the hearing officer is heightened since it is duty-bound to insist upon compliance to protect the claimant and society's interest to provide for the injured worker and his family. In the present case, there is no question that if the OWC rules had been followed, the hearing officer would not have approved of the settlement. Moreover, at oral argument, it was conceded that if the hearing officer had known of Mr. Harrington's increased disability and recent medical, she would not have approved of the settlement.
After reviewing the applicable statutes, the staleness of this petition, and OWC's internal rules of assessment, it is evident that had the hearing officer complied with these requirements it would not have approved the settlement without first conducting a hearing. As addressed in Smith, 392 So.2d at 402, "[e]ven innocent acts which deprive a party cast in judgment of some legal right can form the basis of this nullity action." In the case sub judice, we find that the hearing officer's failure to follow the OWC's rules constitutes ill practices which resulted in grave injustice to this claimant, and, therefore, this compromise settlement should be set aside on grounds of ill practice which nullifies the compromise judgment. Accordingly, we nullify the settlement and remand this case to the OWC for further action.
For the foregoing reasons, the judgment of the hearing officer is reversed and set aside. It is hereby ORDERED, ADJUDGED, AND DECREED that there be *1378 judgment herein in favor of Roland Harrington and against Quality Steel Building Erectors and its insurer, Hartford Insurance Company, nullifying the worker's compensation settlement approved by the Office of Worker's Compensation on June 22, 1990. This matter is remanded to the Office of Worker's Compensation for further proceedings Consistent with the views expressed herein. Costs of this appeal are assessed to Quality Steel Building Erectors and Hartford Insurance Company.

REVERSED AND REMANDED.
AMY, J., dissents and assigns reasons.
DECUIR, J., dissents for reasons assigned by AMY, J.
AMY, Judge, dissenting.
I respectfully disagree with the majority opinion for the following reasons. First, the majority holds that a lump sum or compromise settlement entered into pursuant to La. R.S. 23:1271 can be set aside for ill-practices on the part of the hearing officer who approved the settlement. The majority injects the "ill-practices" test of La.Code Civ.P. art. 2004 into the worker's compensation law applicable to this case. However, the legislature has provided for the exclusive grounds for such action in La.R.S. 23:1272, namely: (1) noncompliance, on the part of the hearing officer, with the guidelines set forth in La. R.S. 23:1272 for approval of the joint petition and (2) once the guidelines have been met and the settlement approved on that basis, fraud or misrepresentation by any party to the settlement.
I also disagree with the majority's opinion inasmuch as it finds error on the part of the hearing officer by failing to conduct a hearing. The majority concludes that it was necessary to conduct a hearing in this case in order to determine that the claimant fully understood the terms and conditions of the proposed settlement agreement because the claimant was unrepresented and functionally illiterate. I find no evidence in the record to indicate that the hearing officer was on notice that the claimant was functionally illiterate and/or possibly did not understand the terms and conditions of the proposed settlement. On the contrary, the claimant executed an affidavit which was presented to the hearing officer, in which he attested that "he has read said joint petition and agreement and had it read and fully explained to him, and the allegations of fact contained therein and made by them are true and correct; that he has also read this affidavit and had it read to him and fully explained to him; that he has full knowledge of all his rights and has entered into this compromise settlement, petition, and agreement fully and voluntarily, with full knowledge of all his rights and with full knowledge of its contents and meanings." Based upon the foregoing, I believe the majority places an unwarranted burden upon the hearing officer in approving a joint petition for settlement. To require a hearing officer to conduct a hearing in order to determine whether the claimant fully understands the terms and conditions of the proposed settlement, without notice of the special circumstances of the claimant, is beyond the scope of La.R.S. 23:1272.
Accordingly, I would affirm the decision upholding the settlement between Mr. Harrington and Hartford.
NOTES
[1] We note that La.R.S. 23:1272(A) and (B), the statutory provisions that are applicable in the case sub judice, were not in effect at the rendition of Smith; nevertheless, we find that the reasoning in Smith controls the present case because the procedural provisions to confect a valid settlement remain mandatory.