709 So.2d 861 (1998)
Robert J. MOREHEAD, et ux., Plaintiffs-Appellees,
v.
FORD MOTOR COMPANY, et al., Defendant-Appellant.
No. 30207-CA.
Court of Appeal of Louisiana, Second Circuit.
February 25, 1998.
*862 Pulaski, Geiger & Laborde by Michael T. Pulaski, New Orleans, for Defendant-Appellant.
William H. McDonald & Associates, P.C. by William H. McDonald, Lake Charles, Price, Fry & Robb, P.C. by William R. Robb, Springfield, MO, Nelson, Hammons & Self by Sydney B. Nelson, Shreveport, for Plaintiffs-Appellees.
Before MARVIN, STEWART and GASKINS, JJ.
GASKINS, Judge.
Defendant Ford Motor Company filed a petition to annul judgment and for a new trial after a jury awarded substantial damages in favor of plaintiffs Robert and Dorothy Morehead in this lawsuit arising out of a serious one-vehicle accident. Ford asserted that, subsequent to trial, the plaintiffs' expert gave testimony in another unrelated case which directly contradicted his testimony in the instant case. The plaintiffs filed a motion for summary judgment which was granted. The defendant appealed. For the reasons set forth below, we affirm the granting of summary judgment.

FACTS
This matter arises out of the same accident as Morehead v. Ford Motor Company, 29,399 (La.App.2d Cir. 5/21/97), 694 So.2d 650, writ denied, 97-1865 (La.11/7/97), 703 So.2d 1265. On July 7, 1992, Mr. and Mrs. Morehead purchased a 1992 Ford F-150 pick-up truck. On July 24, 1992, they were involved in a one-vehicle accident on Louisiana Highway 528 in Webster Parish. As he was driving eastbound, Mr. Morehead bent over to pick up a newspaper that had fallen on the floor of the truck on the driver's side. The truck drifted across the center line into the oncoming lane of traffic and traveled 200 feet on the grassy, gravel north shoulder. Mr. Morehead then steered right and veered back onto the road. According to Mr. Morehead's testimony, he then attempted to steer left to proceed in the eastbound lane; however, the steering failed to respond. After crossing both lanes of traffic, the truck left the road on the south side, spun counterclockwise, and rolled over. Mr. Morehead was seriously injured and suffered paralysis from the chest down with limited arm use. Mrs. Morehead sustained broken ribs and lacerations. After the accident, an inspection of the truck revealed that the intermediate *863 steering system shaft, which is composed of two tubes, one inside the other, had pulled apart at the joint between the tubes.
The Moreheads sued Ford Motor Company, the dealership from which they purchased the truck, and the manufacturer of the steering shaft. The manufacturer of the steering shaft was dismissed by summary judgment prior to trial, and the dealership was dismissed pursuant to a directed verdict.
At trial, the Moreheads presented the testimony of Simon Tamny as a reconstruction expert. Prior to trial, Mr. Tamny had the steering shaft removed from the vehicle and sent to him at his Ohio office. (Apparently, Ford's experts had the opportunity to examine it prior to its removal.) Later, after being told the case had been settled, Mr. Tamny discarded the steering shaft. At trial, he testified that he believed the steering shaft separated as Mr. Morehead steered to the right from the north shoulder of the road. To the contrary, the experts presented by Ford testified that the rollover of the truck caused the shaft to pull apart.
The jury found in favor of the Moreheads and against Ford. While the case was on appeal but prior to the rendition of the appellate court opinion, Mr. Tamny was an expert witness testifying against Ford in another unrelated lawsuit. The case of Sandra Gail Davis and Earl Davis v. Ford Motor Company and C. Long, Inc., was tried in Arkansas federal court in December 1996. During his testimony, he was asked about the Morehead case. Mr. Tamny stated: "I took [the steering shaft] out, inspected it, found there was no defect in it, which was hardly to [Ford's] disadvantage." Ford attempted unsuccessfully to have the appellate record in the Morehead case supplemented with Mr. Tamny's testimony from the Davis case. Although it reduced Mrs. Morehead's damages, the appellate court otherwise affirmed, and the supreme court denied writs in the matter.[1]
Ford filed a petition to annul judgment and for new trial with the trial court. It claimed entitlement to relief on the basis of "ill practices," i.e., the false testimony of Mr. Tamny. The Moreheads responded with an exception of no cause of action and a motion for summary judgment. Although the exception was denied, summary judgment was granted. Even though the trial court conceded that Mr. Tamny's trial testimony was inconsistent and "didn't make a whole lot of sense," the court found that, even without his testimony, there was enough other evidence to uphold the verdict.
Ford appealed, asserting that the trial court improperly failed to find that there were genuine issues of disputed fact which could only be resolved at trial.

LAW

Summary judgment
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La. 1991); Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730.
Summary judgments are governed by La. C.C.P. art. 966, which was amended in both the 1996 and 1997 legislative sessions. See Acts 1996, 1st Ex.Sess., No. 9, and Acts 1997, No. 483. The effect of these amendments is to establish that summary judgment is now favored. The article presently reads as follows:
A. (1) The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
(2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. *864 The procedure is favored and shall be construed to accomplish these ends.
B. The motion for summary judgment and supporting affidavits shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.
C. (1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
D. The court shall hear and render judgment on the motion for summary judgment within a reasonable time, but in any event judgment on the motion shall be rendered at least ten days prior to trial.
E. A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case.
The amended versions of the article are procedural in nature; therefore, they are subject to retroactive application. Curtis v. Curtis, 28,698 (La.App.2d Cir. 9/25/96), 680 So.2d 1327; NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,555 (La. App.2d Cir. 8/21/96), 679 So.2d 477; Short v. Giffin, 96-0361 (La.App. 4th Cir. 8/21/96), 682 So.2d 249, writ denied, 96-3063 (La.3/7/97), 689 So.2d 1372.

Action for nullity
La.C.C.P. art. 2004 provides that any final judgment obtained by fraud or ill practices may be annulled. "Ill practice" is any improper practice or procedure which operates, even innocently, to deprive a litigant of some legal right. Foret v. Terrebone, Ltd., 93-676 (La.App. 5th Cir. 1/25/94), 631 So.2d 103; State Through Department of Social Services v. Jones, 94-2605 (La.App. 1st Cir. 10/6/95), 671 So.2d 404. The "legal right" of which a litigant must be deprived to have a judgment annulled has been defined as the opportunity to appear and assert a defense. Foret v. Terrebone, Ltd., supra.; State, Through Department of Social Services v. Jones, supra. When ill practices are alleged, the court must examine the case from an equitable viewpoint to determine whether the party seeking annulment has met the burden of showing "how he was prevented or excused" from asserting his claims or defenses. Foret v. Terrebone Ltd., supra.
The law no longer requires that the alleged fraud or ill practice be on the part of the party in whose favor the judgment was rendered. See Comment (c) to La.C.C.P. art. 2004. Morris v. East Baton Rouge Parish School Board, 93-2396 (La.App. 1st Cir. 3/3/95), 653 So.2d 4, writ denied, 95-0852 (La.5/5/95), 654 So.2d 335.
The jurisprudence outlines two criteria for a determination that a judgment has been obtained through fraud or ill practices, namely (1) when the circumstances under which the judgment was rendered show the deprivation of the legal rights of the litigant who seeks relief, and (2) when the enforcement of the judgment would be unconscionable and inequitable. Kem Search, Inc. v. Sheffield, 434 So.2d 1067 (La.1983); Foret v. Terrebone, Ltd., supra.; State Through Department of Social Services v. Jones, supra.
*865 The burden of so proving is upon the plaintiff in the nullity action. Burkett v. Property of Douglas, 575 So.2d 888 (La.App. 2nd Cir.1991); State Department of Social Services v. Jones, supra.
The trial court is permitted discretion in deciding when a judgment should be annulled because of fraud or ill practice. Kem Search, Inc. v. Sheffield, supra.
Each case must be viewed according to its own peculiar circumstances. Chauvin v. Nelkin Insurance Agency, Inc., 345 So.2d 132 (La.App. 1st Cir.1977), writ denied, 347 So.2d 256 (La.1977).

SIMON TAMNY'S TESTIMONY
In his first deposition, taken on May 23, 1995, Mr. Tamny repeatedly stated his opinion that there was no manufacturing defect in the intermediate steering shaft. However, he criticized the use of this steering system in this particular type of vehicle because of the nominal installed length. He also stated that the steering shaft disassembled before the rollover. Based upon Mr. Morehead's testimony about the loss of steering and the tire mark evidence on the road, he opined that the disassembly occurred sometime after the right front wheel started to reenter the highway, perhaps when the left front wheel went onto the pavement. He also stated that he saw no evidence that would explain the disassembly of the steering system in the course of the rollover. He did not know what triggered the disassembly. He stated that it was not impossible that the part was failed and reassembled at some time before the truck was sold, but he did not believe that he could comment definitively on this issue.
Mr. Tamny was deposed again on November 7, 1995. At this point, he stated that the intermediate shaft could not have failed any time after it was installed in the truck. In his opinion, it did not fail in the truck and must have been pulled apart and reassembled before it was installed. He was still of the opinion that the intermediate shaft actually separated at or near the time the truck's left front wheel came up on the pavement.
In our previous opinion, this court summarized Mr. Tamny's trial testimony as follows, 694 So.2d at 657-659:
When first deposed, Mr. Tamny testified that the steering shaft may possibly have failed and been reassembled before the Moreheads purchased the pickup in July, 1992. In his second deposition, Mr. Tamny stated that the intermediate steering shaft was pulled apart and reassembled before installation in the vehicle. However, at trial Mr. Tamny opined that the steering shaft had not been completely pulled apart before installation.
Although his testimony appears to be inconsistent, Mr. Tamny clarified what he meant when he said "pulled apart" during his testimony at trial. Mr. Tamny explained that the steering shaft is effectively "pulled apart" and the strength of the joint destroyed when the inner tube, or midtube, is pulled approximately one-half inch. At that point, the two tubes overlap slightly and are still connected.
....
Although Mr. Tamny's testimony appears to be inconsistent, a review of Mr. Tamny's rather lengthy examination at trial establishes that Ford had the opportunity to cross-exam Mr. Tamny regarding his testimony at trial which differed from his testimony during the two pretrial depositions and was not prejudiced by such change in his testimony....
....
Mr. Tamny testified that the marks on the left front wheel of the truck demonstrated that the tire struck the north pavement edge with substantial force. Mr. DeSantis [a design analysis engineer for Ford] admitted that Ford's inspection team noted the marks. Dr. Habberstad [Ford's accident reconstruction expert] also acknowledged the marks.
Ample testimony and evidence provided factual support and a basis for Mr. Tamny's opinions. Ford had an opportunity at trial to cross-examine Mr. Tamny regarding his interpretation of the photographic evidence, the computer simulation and steering column tests he conducted, and his opinions on possible cab displacement, *866 the speed of the truck and intermediate shaft separation during a rollover. The testimony and evidence adduced at trial substantiated Mr. Tamny's opinions that the intermediate steering shaft separated upon the truck's impact with the north edge of the pavement and that the impact caused the total separation of the collapse joint which rendered the steering mechanism inoperable and caused the accident and damages to the Moreheads. Further, Mr. Tamny testified that the overlap of the two tubes was insufficient to prevent the shaft from fully extending and beginning to separate. He stated that additional overlap would prevent the complete separation which occurred in the case sub judice and suggested that Ford should conduct a visual inspection of the part before installation. Mr. Tamny testified that the alternative design and additional inspection was within Ford's knowledge and capability and was economically feasible in that the cost to Ford would be less than five cents per vehicle. Ford did not introduce any evidence to the contrary. Although the testimony of Mr. DeSantis and Dr. Habberstad contradicts portions of Mr. Tamny's testimony, the determination of what weight and credibility to give each expert's testimony was well within the discretion of the jury.
On direct examination at trial, Mr. Tamny stated the steering system was defective in two respects: for some unknown reasons, it was not as strong as it was supposed to be, and the tubes did not have enough overlap. However, he also stated specifically he was not aware of anything defective in the steering column itself. On cross-examination, he stated he had "no conceptual criticism of the design of the shaft"; his only concern was the "little allowance for extension before the thing disconnects" and the lack of inspection of the joint in the manufacturing process.
During the Davis trial in federal court in Arkansas, Mr. Tamny testified as an expert for the plaintiffs. The issue of spoilation of evidence was raised because another expert (who apparently worked for Ford) destroyed certain documents and evidence. The following exchange took place between counsel for Ford and Mr. Tamny:
Q But as you and I both know sometimes experts destroy things in the middle of a lawsuit, don't they?
A No, no, that's not the point.
Q No, sir, just answer my question. Isn't it true that sometimes experts destroy things in the middle of lawsuits?
A Not on purpose.
Q Well, no, sir, not on purpose. In fact, didn't that happen in a recent lawsuit you and I had together?
A Yeah, I was told that it had settled so I threw the parts away and it turned out it hadn't.
Q In fact, you threw away the steering shaft that was the subject of the lawsuit. Correct?
A The intermediate shaft.
Q But you threw it away.
A It was after you guys looked at it.
Q No, sir, it was in the truck. Isn't it true, Mr. Tamny, you had it removed from the truck.
A Right.
Q Shipped to Ohio.
A Right.
Q Didn't tell me about it, had it examined up in Ohio.
A No, I don't about I didn't tell you about it. [sic]
Q Okay.
A Because I'm not the lawyer. I looked at [it] in the truck, you looked at it in the truck. I took it out, inspected it, found there was no defect in it, which was hardly to your disadvantage. Then somebody said the case was over so I cleaned house. [Emphasis added]

DISCUSSION
After examination of the record, we find that there are no disputed issues of material fact. The complete statements made by Mr. Tamny are before us. While we note several inconsistencies, as did this court on appeal and the trial court at the hearing on the motion for summary judgment, we do not find anything rising to the level of "ill practices."
*867 As previously noted, an "illegal practice" operates, even innocently, to deprive a litigant of some legal right, specifically the opportunity to appear and assert a defense. In the instant case, Ford has had ample opportunity, particularly during trial on the merits, to assert its defense. At the depositions, at trial, and on appeal, Ford has strenuously and zealously attacked Mr. Tamny's testimony. Through vigorous cross-examination at trial, counsel for Ford thoroughly challenged his opinions.
Mr. Tamny's one-line statement in the Davis case is a plain reference to the intermediate steering shaft, which he previously opined contained no manufacturing defect. Assuming arguendo that it was a reference to the entire steering system, at worst, this statement would amount to another inconsistency, like those already intensely explored by Ford's counsel on several occasions. It is not a basis for effectively re-trying the case, which at some point must conclude with finality.
Summary judgment in favor of the plaintiffs was properly granted.

CONCLUSION
The trial court judgment granting summary judgment in favor of the plaintiffs is affirmed. Costs are assessed against the appellant.
AFFIRMED.
NOTES
[1] On appeal, the $5 million award to Mr. Morehead was affirmed. However, the original award of $1 million in favor of Mrs. Morehead was reduced first to $350,000 in the trial court on remittitur and then to $250,000 by this court on appeal.