McClendon, J.
12An employer and its insurer appeal a judgment of the Office of Workers’ Compensation (OWC), vacating the approval of a settlement between them and an employee. For the following reasons, we affirm.
FACTUAL AND PROCEDURAL HISTORY
It is not disputed that Wendell McCar-roll was injured in a work-related accident on December 22, 2003, while employed with the Livingston Parish Council (Council). The Council’s workers’ compensation insurer, Louisiana Workers’ Compensation Corporation (LWCC), began paying medical and indemnity benefits soon thereafter. Mr. McCarroll treated with various doctors, including Dr. Lori Summers, who recommended cervical fusion surgery in July 2008. Mr. McCarroll initially declined the surgery, and, in November 2008, LWCC began negotiating a settlement with Mr. McCarroll’s attorney.
In early January 2009, the parties agreed to the terms of a settlement, including a Medicare Set Aside (MSA). The MSA projected future medical treatment and prescription drug treatment in the amount of $98,684.00. That amount was broken down into an estimate of $44,129.00 for future medical payments and $54,555.00 in future prescription costs. Of the $44,129.00 amount, $21,793.00 was allocated for Mr. McCarroll’s recommended surgery. The MSA was to be funded through an annuity with seed money in the amount of $32,045.00 and an annual payment of $4,759.91 for a maximum of four *1175 teen years. There was also an agreement for an indemnity payment in the amount of $110,000.00. The MSA was submitted to the Department of Health and Human Services, Centers for Medicare and Medicaid Services (CMS) for review and approval.
Thereafter, Mr. McCarroll decided to proceed with the cervical fusion surgery, and LWCC was contacted by the hospital for approval of the surgery. Because of the pending settlement, the request was denied as not needed.
The MSA was approved by CMS on February 2, 2009. Concerned about the cost of the surgery, Mr. McCarroll’s attorney asked LWCC for an additional | s$10,000.00, and, on February 10, 2009, $5,000.00 was approved for non-covered Medicare expenses.[1] LWCC offered the additional $5,000.00, and Mr. McCarroll accepted that amount.
Mr. McCarroll underwent the cervical fusion surgery on February 16, 2009. Apparently, there were complications, and Mr. McCarroll remained in the intensive care unit for an extended period of time. On March 2, 2009, Mr. McCarroll executed the Settlement Agreement and Release.[2]
Thereafter, LWCC received the settlement documents signed by Mr. McCarroll and approved by the OWC on March 9, 2009. In accordance with the Order of Approval, LWCC funded the settlement and stopped paying Mr. McCarroll weekly compensation benefits.
On March 10, 2011, Mr. McCarroll filed with the OWC a Petition to Enforce Settlement Agreement or, in the Alternative, to. Nullify Court Approval of March 9, 2009. In his petition, Mr. McCarroll asserted that Medicare has refused to pay for any medical expenses that were incurred prior to the March 9, 2009 approval of the workers’ compensation settlement and that LWCC has refused to pay for any medical treatment from late January 2009 up to the March 9, 2009 approval of the settlement, which included Mr. McCarroll’s surgery and the costs thereof. Mr. McCarroll requested an order from the OWC ordering the payment by LWCC of all medical expenses incurred prior to March 9, 2009, and the payment of all weekly compensation benefits through March 9, 2009, or, in the alternative, an order annulling the March 9, 2009 settlement agreement.[3]
The matter went to trial on April 24, 2013. At trial, the parties agreed that the issue for the OWC to decide was whether LWCC was responsible for the medical expenses that were incurred by Mr. McCarroll after February 10, 2009, |4but before March 9, 2009. On June 17, 2012, written reasons were issued and a judgment signed by the OWC. The judgment vacated the settlement approved by the OWC on March 9, 2009. The Council and LWCC (the defendants) appealed.
STANDARD OF REVIEW
In workers’ compensation cases, the appropriate standard of review to be applied by the appellate court to the OWC’s findings of fact is the “manifest error-clearly wrong” standard. Dean v. Southmark Const., 03-1051 (La.7/6/04), *1176 879 So.2d 112, 117. The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one. Stobart v. State, through Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993). If the fact finder’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Albert v. Air Products and Chemicals, 12-0773 (La.App. 1 Cir. 2/6/13), 112 So.3d 906, 908, writ denied, 13-0744 (La.5/17/13), 118 So.3d 375.
DISCUSSION
Workers’ compensation rests on the sound economic principle that those persons who enjoy the goods or services of a business or other systematic purposeful activity should ultimately bear the cost of the injuries or deaths of its employees that are incident to the production and distribution of its goods and services. Roberts v. Sewerage and Water Bd. of New Orleans, 92-2048 (La.3/21/94), 634 So.2d 341, 343. Consequently, workers’ compensation law is to be liberally construed in favor of protecting workers from the economic burden of work-related injuries. Nelson v. Motiva, 04-2436 (La.App. 1 Cir. 12/22/05) 928 So.2d 34, 36; Morris v. East Baton Rouge Parish School Bd., 93-2396 (La.App. 1 Cir. 3/3/95), 653 So.2d 4, 6, writ denied, 95-0852 (La.5/5/95), 654 So.2d 335.
| ^Louisiana workers’ compensation law allows, but does not favor, the compromise or settlement of workers’ compensation claims. LSA-R.S. 23:1271[4]; Guidry v. One Source Facility Services, 04-2007 (La.App. 4 Cir. 4/27/05), 901 So.2d 626, 628. Further, the law contains specific provisions that govern the compromise of claims. Louisiana Revised Statutes 23:1272 provides, in pertinent part:
A. A lump sum or compromise settlement entered into by the parties under R.S. 23:1271 shall be presented to the workers’ compensation judge for approval through a petition signed by all parties and verified by the employee or his dependent, or by recitation of the terms of the settlement and acknowledgment by the parties in open court which is capable of being transcribed from the record of the proceeding.
B. When the employee or his dependent is represented by counsel, and if attached to the petition presented to the workers’ compensation judge are affidavits of the employee or his dependent and of his counsel certifying each one of the following items: (1) the attorney has explained the rights of the employee or dependent and the consequences of the settlement to him; and, (2) that such employee or dependent understands his rights and the consequences of entering into the settlement, then the workers’ compensation judge shall approve the settlement by order, and the order shall *1177 not thereafter be set aside or modified except for fraud or misrepresentation made by any party.
This statute was designed to provide numerous safeguards to prevent an employee from being coerced, to prevent a hasty and possibly ill-advised resolution of the employee’s claim, and to protect the parties from unwise actions which may cause them serious detriment. Morris, 653 So.2d at 6.
There can be no settlement of a workers’ compensation claim in the absence of compliance with the procedure prescribed by LSA-R.S. 23:1272. Smith v. Isle of Capri Casino & Hotel, 10-0161 (La.App. 1 Cir. 9/10/10), 47 So.3d 642, 644. However, once the procedural requirements of the workers’ compensation law have been complied with and an order approving a compromise settlement has been entered by the OWC, the judgment is conclusive, and it cannot be set aside except for fraud, misrepresentation, or ill practices. Id. See also Smith v. Cajun Insulation, Inc., 392 So.2d 398, 401-02 (La.1980).
In their sole assignment of error, the defendants contend that the OWC manifestly erred in vacating the settlement approved by the OWC on March 9, 2009. The defendants maintain that the cost of Mr. McCarroll’s expected future surgery was funded as part of the settlement. They assert that the clear language of the settlement resolved the entire claim and included past, present, and future medical and indemnity benefits. Because the cost of the cervical fusion surgery was included in the MSA, the defendants contend they are not responsible for anything further.
Mr. McCarroll contends, however, that not only did he think that LWCC and Medicare would pay for the costs of his surgery, but that LWCC also believed that the surgery would be paid out of the MSA, with any additional costs covered by Medicare. Mr. McCarroll asserts that the OWC correctly vacated the approval of the settlement because neither party anticipated that his surgery would not be covered by the MSA and that he would be responsible for the costs of his surgery. Therefore, according to Mr. McCarroll, the settlement did not reflect a meeting of the minds.
Introduced at trial were copies of email messages that were exchanged between Toby Wallis, who negotiated the settlement for LWCC, and Mr. McCarroll’s attorney. On December 15, 2008, after counsel expressed his concern that Mr. McCarroll’s operation might cost more than the estimated amount and that he would like language in the settlement that LWCC would pick up any excess, Mr. Wallis replied:
17LWCC will not put wording in the settlement documents that we will take care of any extras not in the MSA. If CMS recommends add’l items that are related to work related injury we generally pay the difference.
Later, on December 18, 2008, Mr. Wallis sent the following email message to Mr. McCarroll’s counsel, in which he stated, in relevant part:
Joe, it’s my experience in general that the MSA’s are fairly liberal because they tend to reflect a projection of the “treating physician’s recommendations”. Some of that may also be attributed to Medicare’s coverages doesn’t kick in until the MSA proceeds are exhausted. Putting my personal experiences aside, Medicare in general is similar to an umbrella policy; once those MSA proceeds are exhausted then Medicare picks up the excess.
Lisa Huffty, the LWCC claims specialist assigned to Mr. MeCarroll’s file, testified at trial that she did not know that if Mr. McCarroll had his surgery before the MSA had been approved by the OWC that the seed money could not be used to pay the *1178 bill. She stated, “I don’t think anybody knew that.” She also testified that based on this case, it is now her understanding that when dealing with an MSA, medical expenses will not be paid by Medicare unless they are incurred after receipt of a signed approval from the OWC.
Mr. McCarroll testified that when he signed the settlement agreement he thought that his medical expenses would all be paid.[5] He stated that he would not have signed the agreement if he knew that he would have been responsible for the payment of any of his medical expenses. Clearly, Mr. McCarroll, like Ms. Huffty, did not understand that by having his surgery prior to OWC approval he would have to bear the costs of the surgery.
In its written reasons, the OWC stated:
[Ms.] Huffty testified at trial that she thought and “everyone thought” at that time that the MSA amount for $21,000 for future surgery could be used to pay for the surgery even if the surgery was done prior to the judge signing the settlement. No one involved in this case at that time envisioned that Medicare would deny coverage because the surgery was done before the settlement was signed by the [OWC].” (Emphasis in original.)
Therefore since the defendants] and [Mr. McCarroll] clearly envisioned that the $21,000 could be used to pay for the surgery at issue even if the [OWC] had not yet signed it, and since [Mr. IsMcCarroll] is now prohibited from using the $21,000 in the MSA to help pay for the surgery that was done, and Medicare will not pay for the surgical costs that exceeded the $21,000, this was not the settlement terms that anyone thought they had negotiated or that they were getting.
Therefore, the Settlement approved by the [OWC]’s signature on March 9, 2009 is vacated.
Based on our own thorough review of the record, we cannot say that the OWC manifestly erred in vacating the Order of Approval signed on March 9, 2009. The OWC set the approval aside finding that all the parties believed that the MSA amount could be used to pay for Mr. McCarroll’s surgery and that Medicare would pay for the surgical costs exceeding the MSA amount. This belief was based, at least in part, on email messages between the parties and the representations by LWCC that the surgery would be paid for. The OWC had to have found that this misunderstanding amounted to a misrepresentation, although unintentional. We find that a reasonable basis exists for this factual finding of the OWC, and we cannot find that it is clearly wrong. Accordingly, we find no error in the OWC’s finding that LWCC’s misunderstanding regarding the MSA was a misrepresentation sufficient to set aside the order of approval. See Ryder v. Industrial Construction Company, 616 So.2d 857, 859 (La.App. 3 Cir.), writ denied, 619 So.2d 1068 (La.1993).
CONCLUSION
For these reasons, the June 17, 2013 OWC judgment vacating the settlement approved on March 9, 2009, is affirmed. Costs of this appeal are assessed to the defendants, Livingston Parish Council and Louisiana Workers’ Compensation Corporation.
AFFIRMED.

. During the settlement negotiations, Mr. McCarroll’s attorney had expressed his concerns to LWCC of whether the costs of Mr. McCarroll’s surgery would be covered if they were over the estimated amount in the MSA and his desire that LWCC pick up any excess.

. The attorney for the Council and LWCC signed the agreement on March 10, 2009.

.Mr. McCarroll also contended that the actions of LWCC were arbitrary and capricious, entitling him to penalties and attorney fees. The issue of penalties and attorney fees is not before us on appeal.

. Louisiana Revised Statutes 23:1271A provides:
A. It is stated policy for the administration of the workers’ compensation system of this state that it is in the best interest of the injured worker to receive benefit payments on a periodic basis. A lump sum payment or compromise settlement in exchange for full and final discharge and release of the employer, his insurer, or both from liability under this Chapter shall be allowed only:
(1) Upon agreement between the parties, including the insurer’s duty to obtain the employer's consent;
(2) When it can be demonstrated that a lump sum payment is clearly in the best interests of the parties; and
(3) Upon the expiration of six months after termination of temporary total disability. However, such expiration may be waived by consent of the parties.

. Mr. McCarroll also testified that he signed with an "X” as he was having trouble signing his name after the surgery.