KUHN, J.
| gEmployer-appellant, Motiva Enterprises (Motiva), appeals a judgment of the Office of Workers’ Compensation (OWC), which concludes that employee-appellee, Louis Nelson, sustained an accident on March 1, 2001, entitling him to indemnity benefits. We affirm.
FACTUAL AND PROCEDURAL BACKGROUND
Nelson, who for approximately 30 years worked for Motiva as an operator, monitoring pumps, motors, turbines, compressors, and fans within his unit, filed a claim on August 15, 2001. He averred that he had not been paid any wage benefits from Motiva as a result of an accident that had occurred in February 1996. After answering Nelson’s claim, on January 30, 2002, Motiva filed a peremptory exception raising the objection of prescription. On June 27, 2002, Nelson amended his claim and alleged that his entitlement to indemnity benefits was a result of an accident that occurred on March 1, 2001, in which he injured his knee while riding a bicycle from one part of his unit to another.
Subsequent to a hearing, OWC denied Motiva’s exception. A trial on the merits of Nelson’s claim for indemnity benefits followed and, after the presentment of evidence, OWC concluded that Nelson had sustained an accident on March 1, 2001, and ordered Motiva to pay weekly indemnity benefits.[1]
| ¡(This appeal by Motiva followed.
DISCUSSION
The Workers’ Compensation Act is to be liberally construed in favor of protecting workers from the economic burden of work-related injuries. Winford v. Conerly Corp., 2004-1278, p. 5 (La.3/11/05), 897 So.2d 560, 564. An employee seeking workers’ compensation benefits must establish by a preponderance of the evidence that he has suffered an injury as a result of an accident arising out of and in the course of his employment. See La. R.S. 23:1031. Louisiana Revised Statutes 23:1021 defines an accident for purposes of workers’ compensation:
(1) “Accident” means an unexpected or unforseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective *37 findings of an injury which is more than simply a gradual deterioration or progressive degeneration.
A worker’s testimony alone may establish a work-related accident if: (1) no other evidence casts serious doubt on his version of the incident; and (2) his testimony is corroborated by the circumstances following the alleged incident. Corroboration may be provided by co-workers, spouses, friends, or medical evidence. Hardy v. State, 2003-1771, p. 2 (La.App. 1st Cir.6/25/04), 885 So.2d 1183, 1184. In determining whether a worker has shown by a preponderance of the evidence that an injury-causing accident occurred in the course and scope of employment, the trier of fact is expected to focus on the issue of credibility because, absent contradictory circumstances and evidence, a worker’s testimony is accorded great weight. Id.
The OWC’s factual determinations regarding the worker’s credibility and whether the worker' has discharged his burden of proof should not be disturbed on Rreview unless manifestly erroneous. Id. In applying the manifest error standard of review, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Where there are two permissible views of the evidence, a factfinder’s choice between them can never be manifestly erroneous or clearly wrong. Stobart v. State, Dep’t of Transp. and Dev., 617 So.2d 880, 883 (La.1993). Thus, if the factfin-der’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 8 (La.7/1/97), 696 So.2d 551, 556.
Where the employee is able to identify • an event marking the- time the injury occurred or the symptoms arose or suddenly or markedly increased in severity, even if such event occurs during the performance of customary or routine work activities, the employee has established an “accident” within, the meaning of La.R.S. 23:1021(1). Begue v. Crossover, Inc., 2003-0267, p. 8 (La.App. 1st Cir.11/21/03), 868 So.2d 100, 105.
On appeal, Motiva urges that the evidence presented was insufficient to sustain Nelson’s burden of proving by a preponderance that an accident- occurred on March 1, 2001. Thus, Motiva urges the manifest error rule does not apply and that this court should undertake a de novo review of the evidence to ascertain whether Nelson sustained his burden of proving an accident occurred on March 1, 2001.
At the trial on the merits, Nelson testified that on March 1, 2001, at around 5:15 p.m., there was an outage of one of the compressors he was in charge of 1 smonitoring. He quickly rushed from the control room to the compressor, riding a bicycle approximately half the length of a football field to that area of the unit where the HTU compressor was located. He was trying to go fast, when his leg started hurting. Nelson felt a snap and a lot of pain in his left kriee. He described how he slowed the bike down and, sitting straddled on the seat, pedaled with his other leg until he arrived at the compressor location. Upon arrival, the workers he supervised were trying to get the compressor running, and he directed them until the compressor was back on line. Although Nelson’s shift was scheduled to end at 6 p.m., he stated that his replacement often arrived earlier. Because it was toward the end of his shift, he simply returned to the control room, wrote up his log, and went home, despite the pain he felt in his left *38 leg. Nelson described how he returned back to the control room in a fashion similar to his arrival, i.e., he pedaled the bike with one leg until he reached the control room on the other side of the unit.
Nelson stated that he was already scheduled to be off work the following day for a doctor’s appointment with Dr. Hector Mena to address pain in his left knee and a swollen right leg. Nelson explained that he had begun seeing Dr. Mena, whom he described as an arthritis doctor, in January 2001, for pain in his elbows and in his left leg. He admitted that he did not tell Dr. Mena he had “an accident” the previous day, stating instead, “I just told [Dr. Mena] ... it started hurting me a whole lot more the day before .... I told him like that.” After advising Nelson that he could not continue performing his job duties at Motiva because of the pain in his left knee, Dr. Mena referred Nelson to his primary care physician, who sent him to see Dr. Scott Petrie.
IfiNelson again conceded that he did not tell Dr. Petrie that he had “an accident” on March 1, 2001. He said that he advised the doctor that he had left leg pain in January 2001 and that the pain increased on March 1, 2001. According to Nelson, Dr. Petrie advised him that he had torn cartilage in his left knee. Nelson denied that he had been advised in 1996 that he had a torn medial menicus. He stated that he thought he had a “sprained knee” after the 1996 accident. Nelson said he learned of the tear in his knee in April 2001, when Dr. Petrie read a letter from Motiva indicating that Nelson had sustained a torn medial menicus as a result of the 1996 accident.
Nelson acknowledged that an injury report was not written up for the March 1, 2001 incident. He testified that on March 2, 2001, he spoke with a supervisor and advised him that Dr. Mena had told Nelson not to return to work until the knee was better. The supervisor did not ask Nelson to fill out any accident forms. Nelson stated that he did not tell the supervisor that he had an accident the previous day but, “I told him my leg was hurting more, that’s why the doctor took me off [work].”
In concluding that Nelson had proven by a preponderance of the evidence that an accident occurred on March 1, 2001, the OWC judge stated:
I do only have ... Nelson’s testimony as to how this occurred. ... I found him a very credible person, a very credible witness. It is very easily understandable and it happens ... a lot with your typical man or woman on the street doing what they do at work every day, sustaining an injury or an aggravation from an injury and first and foremost not realizing the magnitude of it; and secondarily, when somebody says, have you been in an accident, not understanding that that equates to an accident as defined by the jurisprudence....
The meds ... support that ... Nelson began to seek very continually steady treatment from March 2, 2001 forward. Prior to that he would go to the doctor every other month and more often than 17not, it would be about some knee pain intermittently.... [B]ut it’s not until the day after his last day at work when he exerted himself that day on the bike that he starts having steady treatment for that left knee on a very regular and demanding basis. Yes, he already had the appointment set up, he was already having some leg pain, but not seeking [the] acute type of relief for problems like he began to do that very next day.
Motiva presented no evidence that east serious doubt on Nelson’s version of the event. And his testimony is corroborated *39 by the circumstances following the alleged incident, particularly the regular course of treatment he sought from health care providers subsequent to March 1, 2001, when he felt a snap and pain in his knee as he hurriedly rode the bicycle from the control room to the compressor. Nelson identified riding his bike quickly to the compressor as the event marking the time he felt a snap and began suffering a lot of pain in his knee, a continuous symptom that occurred suddenly and markedly increased in severity. Thus, even though the disabling injury to Nelson’s knee occurred during the performance of customary or routine work activity, mindful that the OWC judge found Nelson to be a very credible witness and that we are required to accord a great weight to a worker’s testimony, Nelson proved an accident occurred on March 1, 2001. This factual conclusion by OWC is not manifestly erroneous.
DECREE
For these reasons, the OWC judgment concluding that Nelson had proven a work-related accident on March 1, 2001, and was, therefore, entitled to indemnity benefits is affirmed. Appeal costs are assessed to Motiva Enterprises.
AFFIRMED.

. The judgment specifically determined that claimant was entitled to temporary total disability payments of $388 per week from March 1, 2001 through January 25, 2002, the date that Nelson's doctor released him to light duty work, and supplemental benefit payments of $388 per week thereafter. The judgment additionally recognized Motiva’s entitlement to credits for unearned wages and all benefits paid to Nelson and ordered interest on those payments the employer made, which failed to meet or exceed $388 per week. The only portion of the judgment the parties have appealed is OWC's conclusion that Nelson sustained an accident on March 1, 2001. Thus, we do not scrutinize the propriety of OWC’s determinations of the type, amount, or duration of the payments to which Nelson is entitled, Motiva's entitlement to credits, or Nelson's right to interest.