665 So.2d 1186 (1995)
NEW ORLEANS HAT ATTACK, INC.
v.
NEW YORK LIFE INSURANCE COMPANY and JRH Management Company of LA., Inc.
NEW YORK LIFE INSURANCE COMPANY
v.
NEW ORLEANS HAT ATTACK, INC.
Nos. 95-CA-0055, 95-CA-0056.
Court of Appeal of Louisiana, Fourth Circuit.
November 30, 1995.
*1187 John J. Sullivan, New Orleans, for Appellant.
Locke Purnell Rain Harrell, Peter J. Butler, Aubrey B. Hirsch, Jr., Richard G. Passler, New Orleans, for Appellees.
Before SCHOTT, C.J., and BARRY, BYRNES, CIACCIO and LANDRIEU, JJ.
LANDRIEU, Judge.
New Orleans Hat Attack, Inc. (Hat Attack) appeals an August 8, 1994, eviction order to *1188 vacate the Jackson Brewery, a commercial and retail shopping center facility owned by New York Life Insurance Company (New York Life). We affirm.

FACTS
Hat Attack signed a five year lease to rent retail space in the Jackson Brewery from New York Life effective July 8, 1991. Hat Attack's shop was 490 square feet on the second floor and highly conducive to walk-in business because it faced the up escalator. The lease included a provision granting New York Life the option of relocating Hat Attack upon forty-five (45) days' notice:
21.27 Relocation

Notwithstanding anything to the contrary contained in this Lease, Landlord, on forty-five (45) days' written notice to Tenant, shall have the right to relocate Tenant's Premises within Landlord's Building at Landlord's reasonable cost and expense.
On February 22, 1994, New York Life notified Hat Attack that, in accordance with the provisions of the lease, it would be relocated on April 15, 1994, to permit construction and lease of space to a new tenant, Planet Hollywood. The following month, New York Life forwarded a sketch to Hat Attack indicating its new location which was a glass enclosed atrium in the back of the second floor. Hat Attack found the site unacceptable because of its location and size; the site was almost double the square footage of the previous site, required modifications in order to adequately display Hat Attack's merchandise, and was removed from pedestrian traffic.
Hat Attack filed a Petition for Preliminary and Permanent Injunction on April 13, 1994, to prevent the relocation. The trial court denied the preliminary injunction and Hat Attack did not appeal. In response to Hat Attack's petition, New York Life filed an exception of no cause of action which was granted. Hat Attack then filed a motion to vacate this judgment but later voluntarily withdrew its motion. Meanwhile, the date of Hat Attack's relocation was extended twice at Hat Attack's request with a final date of May 6, 1994. Hat Attack's agreement to relocate was confirmed by its counsel in a letter dated April 22, 1994, to New York Life. After the final extension date, Hat Attack refused to move and New York Life filed a petition for eviction. At the August 8, 1994, eviction hearing, the trial court found that Hat Attack had agreed to relocate and breached its lease when it did not. Accordingly, the trial court ordered Hat Attack to vacate the premises.

Preliminary Injunction
Hat Attack argues that the trial court erred when it dismissed Hat Attack's preliminary injunction in April, 1994. Hat Attack claims it can raise the dismissal at this time but we disagree. The Code of Civil Procedure specifically addresses appeal of a judgment on a preliminary injunction and mandates that "[a]n appeal from an order or judgment relating to a preliminary injunction must be taken and a bond furnished within fifteen days from the date of the order or judgment...." La.Code Civ.Proc. art. 3612 (West 1961). Therefore, Hat Attack's appeal of the injunction judgment is not timely and will not be addressed.

Eviction

a) Mootness
New York Life asserts this issue is moot because Hat Attack did not perfect a suspensive appeal and voluntarily moved from the premises pursuant to the eviction order. An evicted lessee who takes a devolutive appeal does not voluntarily acquiesce in the judgment when he vacates the premises and that "[a]s a general rule, the right to take a devolutive appeal is not forfeited by a compliance with the judgment complained of. The reason is that a person who takes only a devolutive appeal from a judgment against him must submit to the execution of the judgment." Goldblum v. Harden, 183 So.2d 756, 757 (La.App. 4th Cir.1966) citing People's Bank v. Levy, 151 La. 583, 92 So. 124 (La.1921). The cases cited by New York Life are distinguishable because they involve expired leases. See Versailles Arms Apartments v. Wheeler, 452 So.2d 326 (La.App. 4th Cir.), writ denied, 461 So.2d 310 (La.1984); Goldblum v. Harden, 183 So.2d 756. Hat *1189 Attack's lease had not expired at the time of the appeal.
A moot case is one which seeks a judgment or decree that, when rendered, will serve no useful purpose or give no practical relief. Strickland v. State, 534 So.2d 956, 958 (La.1988). Although this Court has held that an evictee who perfects either a devolutive or suspensive appeal does not acquiesce in the eviction judgment by vacating the premises, we have never addressed whether the type of appeal taken limits the evictee's available remedies. This Court holds that if the evictee takes a suspensive appeal he retains possession of the premises; however, as a general rule, if he takes a devolutive appeal his only relief is monetary damages for wrongful eviction. The validity of the eviction judgment, therefore, is properly before us.

b) Breach
Hat Attack contends that the trial court committed an error in issuing its order of eviction. Hat Attack does not argue that New York Life failed to give notice or otherwise comply with the eviction proceedings. Rather, Hat Attack argues that it had no obligation to relocate because the new space was unsuitable for two reasons: its location and lack of pedestrian traffic, and the agreed upon renovations had not been completed by the relocation date.
Section 21.27 of the lease clearly gives New York Life the right to relocate Hat Attack. However, this right is not an unlimited right. The Civil Code requires that a lessor deliver and maintain leased premises in a condition suitable for its intended use. See La.Civ.Code art. 2692 (West 1952). The lease defined the intended use in Section 1.1(h) as "the retail sale of ... caps and hats and merchandise related specifically thereto."
Hat Attack claims that the new space will so inhibit sales that it is unsuitable. While we may agree that the new location is not as prime as Hat Attack's original space, the language in the lease gives New York Life very broad discretion. The proposed location had been previously used by another retail business and was intended for retail usage. New York Life agreed to renovate the new space to meet Hat Attack's needs.
A lease contract forms the law between the parties, defining their respective legal rights and obligations. The parties are bound by the agreement regardless of any harsh consequences contained in those agreements; the provisions of the agreement should be enforced so long as they do not contravene good morals or public policy. See La.Civ.Code Ann. art. 1759, 1983 (West 1987). Hat Attack had the opportunity to review the lease prior to its execution and negotiate for any changes or modifications. Section 21.14 of the lease expressly provided that the lease represents the final expression of the agreement of the parties and that it contains a complete and exclusive statement of the terms, negotiations and considerations incorporated into the agreement by the parties. By signing the lease, Hat Attack agreed to the conditions contained therein.
The lease allows the landlord the right to relocate its tenants upon reasonable notice. New York complied with the relocation provision and even gave Hat Attack several extensions for the move after Hat Attack agreed to relocate. When Hat Attack refused to move, it breached the lease. When a lessee's right of occupancy ceases for any reason, the lessor is entitled to utilize summary eviction proceedings to obtain possession of the premises as authorized by the Code of Civil Procedure. See La.Code Civ. Proc.Ann. art. 4701, 4731 (West Supp.1995).
The trial court's order of eviction is affirmed.
AFFIRMED.
BARRY, J., dissents with reasons.
BYRNES, J., dissents with reasons assigned by BARRY, J.
BARRY, Judge, dissenting with reasons.
The relocation clause grants New York Life the right to relocate Hat Attack within the building. That right is not unrestricted and must be defined by New York Life's obligation to deliver and maintain the premises *1190 in a condition suitable for its intended use. La.C.C. art. 2692 imposes upon the lessor the duty
2. To maintain the thing in a condition such as to serve for the use for which it is hired.
La.C.C. art. 2729 provides a remedy when a party fails to fulfill its obligations under a lease:
The neglect of the lessor or lessee to fulfill his engagements, may also give cause for a dissolution of the lease, in the manner expressed concerning contracts in general....
Section 1.1(h) of the lease unambiguously states the parties' intended use is "retail sale of ... caps and hats and merchandise related specifically thereto." Section 4.4 of the lease clearly states the parties' intent that Hat Attack transact "a maximum volume of business in and at the Premises" and it sets forth the company's retail hours.
Neither the general relocation clause nor New York Life's exercise of its right to relocate the lessee nullifies New York Life's obligation under Article 2692. New York Life does not have an unbridled right to reassign space and unilaterally determine the quid pro quo. Thus, when the original location was suitable and conducive to business, New York Life cannot relocate Hat Attack to a location unsuitable for its business.
According to the sketch of the proposed relocation, the new site had double the floor space, Hat Attack was one of only two tenants on the second floor (originally there were ten). Importantly, the escalators which brought customers near the front door and directed pedestrian traffic near the store were removed.
Frank Leo, part owner of Hat Attack, testified that 75% to 80% of his customers entered the original premises from the escalators. Leo testified that after the escalators were removed his sales decreased to such an extent that "there is virtually no sale." All but two businesses (including Hat Attack) vacated the second floor, and New York Life did not erect any signs to direct customers to Hat Attack. Additionally, Leo stated he does not have the stock to fill the increased space. None of those facts were disputed by New York Life.
The circumstances show that the relocation was inferior and unsuitable for its intended use under the lease.
The majority states "Hat Attack's agreement to relocate was confirmed by its counsel in a letter dated April 22, 1994, to New York Life," but does not address Hat Attack's argument that the letter is inadmissible because it is part of settlement negotiations. Even if admissible, the letter merely confirms that New York Life extended the deadline to relocate:
As per our conversation, this will serve to confirm that you have granted New Orleans Hat Attack, Inc. an additional extension of time to relocate ... after the close of business on May 6, 1994.
That language does not establish Hat Attack's acquiescence or consent to the proposed relocation.
I disagree that Hat Attack's only remedy in this devolutive appeal is monetary damages. The record does not establish that the leased premises or other possible relocation sites within the Jackson Brewery no longer exist.
I dissent.
BYRNES, J., dissents with reasons assigned by BARRY, J.