897 So.2d 867 (2005)
Arties L. MANNING, Jr. and Quamysha Taylor, both individually and on behalf of their minor daughter, Artiesha Taylor
v.
UNITED MEDICAL CORPORATION OF NEW ORLEANS, individually and d/b/a United Medical Center, et al.
Arties L. Manning, Jr. and Quamysha Taylor Manning, both individually and on behalf of their minor daughter, Artiesha Taylor Manning
v.
United Medical Corporation of New Orleans, individually and d/b/a United Medical Center, David Lee Golden, M.D., James English, Kevin Barkman, Janine S. Delehunt, Donald R. Dizney and Romona Baudy.
Nos. 2004-CA-0310, 2004-CA-0311.
Court of Appeal of Louisiana, Fourth Circuit.
March 2, 2005.
Rehearing Denied April 20, 2005.
*869 W. Christopher Beary, R. Ray Orrill, Jr., Leslie A. Cordell, Peter J. Hamilton, Jr. Orrill, Cordell & Beary, L.L.C., New Orleans, LA, for Plaintiff/Appellee.
Jennifer A. Fiore, Stephanie B. Laborde, Angela W. Adolph, Milling Benson Woodward L.L.P., Baton Rouge, LA, for Appellant.
(Court composed of Judge CHARLES R. JONES, Judge TERRI F. LOVE, Judge DAVID S. GORBATY.).
TERRI F. LOVE, Judge.
This appeal arises out of injuries Artiesha Taylor sustained at birth. Specifically, this action involves reimbursement to Artiesha's parents, Arties L. Manning and Quamysha Taylor ("the Mannings"), for custodial care and related benefits pursuant to La.Rev.Stat. 40:1299.43. The trial court modified the decision of the Louisiana Patient's Compensation Fund Oversight Board ("Board") and it is from this judgment that the Louisiana Patient's Compensation Fund ("PCF") appeals. For the reasons assigned below, we affirm in part, and reverse in part.

FACTS AND PROCEDURAL HISTORY
Artiesha was born at United Medical Center with perinatal asphyxia after Dr. David Golden, a qualified health care provider, failed to correct obvious signs of fetal distress in her mother, Quamysha Taylor. As a result of the doctor's alleged negligence, Artiesha suffered severe and permanent brain injuries. Presently, she must be fed through a tube and requires twenty-four hour per day care. However, Artiesha has and continues to attend school from approximately 8:00 a.m. to 3:00 p.m. The Mannings do not care for Artiesha during school hours.
The Mannings settled with United Medical Center for $100,000, which was the hospital's maximum liability under La.Rev.Stat. 40:1299.42(B)(2). The PCF tendered $600,000 to the Mannings with a reservation of the plaintiffs' right to seek additional amounts due for future medical and related care.
Pursuant to the settlement, the Mannings provided the PCF with a claim regarding nursing and custodial care, which they were providing for their child. The Mannings contend the care they are providing to Artiesha entitles them to payment at the rate paid to a Licensed Practical Nurse (LPN), namely $42.00 per hour. The PCF reimbursed the Mannings at the rate of $6.26 per hour, as dictated by their promulgated rules, for care provided by family members.
The Mannings filed a complaint with the PCF's Oversight Board seeking a determination of the proper reimbursement rate for caring for Artiesha. The complaint was originally heard by the Board's Claims Committee and the committee's findings were adopted by the entire Oversight Board. The Board issued a final opinion finding "that Artiesha had been receiving *870 adequate care to promote good health." Additionally, the Board determined that the reimbursement rates outlined in the PCF rules for the custodial care provided by the Mannings were "reasonable and necessary." It also stated the PCF's reimbursement procedures and rates, including its rates for third party providers were appropriate based upon the circumstances of the care. The Board further found the Mannings failed to present any evidence that Artiesha had not been receiving adequate care, nor that the care the Mannings were providing to their child in any way equated to the care she would receive from an LPN.
As a result of the Board's determination, the Mannings appealed the decision of the Oversight Board by filing a Petition for Review of Administrative Final Decision of the Patient's Compensation Fund Oversight Board; and, they also filed an Amending and Supplemental Petition with the trial court seeking judgment on the same issues raised in the Petition for Review. The Mannings subsequently filed a Motion for Summary Judgment on its Amending and Supplemental Petition. The PCF filed an Exception of Venue challenging venue in Orleans Parish and opposing the plaintiffs' summary judgment alleging the petition filed by the Mannings was the incorrect vehicle to pursue a review of an Administrative Agency. The PCF, in its exception, maintained that an appeal of the Oversight Board requires mandatory venue in the Nineteenth Judicial District. The trial court denied the PCF's Exception of Improper Venue and the matter proceeded to trial.
The trial court issued a judgment on Plaintiffs' Petition for Review, finding that Artiesha Manning was a patient in need of twenty-four hour per day nursing care services, such that would be rendered by a LPN. The trial court found the Mannings were rendering services to Artiesha comparable to that of a LPN; and therefore, must be compensated for each hour as such. The trial court further entered judgment in favor of the Mannings for an amount equal to the PCF's schedule of hourly rates for the services of one LPN for 20.46 hours a day, 365 days per year, from the date of Artiesha Manning's birth through the date of judgment with a credit for the amount already paid to the Mannings for "custodial/sitter" care together with interest as provided by law.
In addition to the Judgment, the trial court stated:
"The issues are presented to the Court in two different forms. The first by way of Plaintiff's Petition for Judicial Review of an Administrative Decision of the Patient's Compensation Fund Oversight Board. The second by way of Amended and Supplemental Petition. Both pleadings essentially seek the same relief and thus the matters were tried simultaneously, although the proof submitted on the Petition for Judicial Review was limited to the record of the proceedings before the Board. For the purpose of these Findings of the Court and Reasons for Judgment on Petition for Judicial Review, consideration was limited to the record of the administrative proceedings."
Finally, the trial court, in its reasons for judgment stated, "Because the court reviewed and addressed the issue presented on judicial review, the merits of the Amended and Supplemental Petition are pretermitted." This timely appeal followed.

ANALYSIS

ASSIGNMENTS OF ERROR
The PCF alleges the trial court erred by: 1) holding that the Orleans Civil District *871 Court was the proper venue to challenge PCF's final decision; 2) finding that a Motion for Summary Judgment was the proper procedural vehicle for challenging the final decision of the PCF; 3) hearing the Motion for Summary Judgment concurrently with the Petition for Judicial Review; 4) holding that Artiesha Manning requires twenty-four hour per day nursing care rendered by a Licensed Practical Nurse; and 5) holding that the Mannings' services were comparable to a Licensed Practical Nurse and should be compensated as such.

ASSIGNMENT OF ERROR 1
First, we address the dispositive issue of venue. The mandatory venue for the judicial review of an administrative decision of the Patient Oversight Board is the parish where the Board is located; the PCF is located in East Baton Rouge Parish for venue purposes. La. R.S. 49:964(B); In re: Medical Review Panel, 98-2603, p. 3 (La.App. 4 Cir. 6/9/99); 736 So.2d 1033, 1035. La. R.S. 49:964(B) states:
Proceedings for review may be instituted by filing a petition in the district court of the parish in which the agency is located within thirty days after mailing of notice of the final decision by the agency or, if a rehearing is requested, within thirty days after the decision thereon. Copies of the petition shall be served upon the agency and all parties of record.
La. R.S. 49:964(B). The Courts and the PCF interpret "may be instituted" to dictate mandatory venue. Evers v. Louisiana State Board of Medical Examiners, 336 So.2d 36, 38 (La.App. 4th Cir.1976); Allen v. Louisiana State Board of Dentistry, 595 So.2d 320, 322 (La.App. 1 Cir.1991); Brown v. Phelps, 392 So.2d 103, 104 (La.App. 1 Cir.1980). However, the PCF overlooks the more recent Louisiana Supreme Court decision which determined that mandatory venue, unlike exclusive jurisdiction, may be waived. Franques v. Evangeline Parish Police Jury, 625 So.2d 157 (La.1993). This Circuit has followed this interpretation. Glover v. City of Gretna, 99-3180, p. 5 (La.App. 4 Cir. 11/14/01); 801 So.2d 1166, 1169. Thus, we must determine if the PCF's actions constituted a waiver of venue.
The Mannings allege that the PCF waived mandatory venue by stipulation and also by operation of law, namely LSA C.C.P. 928(A), which states:
The declinatory exception and the dilatory exception must be pleaded prior to or in the answer and, prior to or along with the filing of any pleadings seeking relief other than entry or removal of the name of an attorney as counsel, extension of time within which to plead, security for costs, or dissolution of an attachment issues on the ground of the non-residence of the defendant and in any event, prior to the confirmation of a default judgment.
LSA C.C.P. 928(A). After the Mannings filed a Motion for Summary Judgment on their Petition for Review and the trial court set the matter for hearing, the PCF drafted and filed a Joint Motion to Continue the hearing on Plaintiffs' Motion for Summary Judgment. The judge granted the joint motion and re-set the hearing. Prior to this ruling the PCF filed an Exception of Improper Venue.
The filing of the Joint Motion to Continue the hearing on Plaintiffs' Motion for Summary Judgment constituted a general appearance, which waived any objection the PCF may have had to venue in Orleans Parish. See Green v. Champion Insurance Co., 577 So.2d 249, 261 (La.App. 1st Cir.1991); Karno v. La. Tax Commission, *872 233 So.2d 592, 596-597 (La.App. 4th Cir.1970).
Accordingly, we affirm the trial court's finding of proper venue in the Civil District Court of Orleans Parish. We find venue was proper due to waiver by action; thus, we pretermit discussion as to the alleged stipulation of venue and the trial Court's original jurisdiction or the policy of judicial economy.

ASSIGNMENTS OF ERROR 2 & 3
The PCF alleges the trial court erred in finding that a Motion for Summary Judgment was the proper procedural vehicle for challenging the final decision of the PCF and hearing the Motion for Summary Judgment concurrently with the Petition for Judicial Review. We find these arguments are without merit.
The trial court did not conduct a hearing on the Motion for Summary Judgment. As such, it did not find the motion to be the proper procedural vehicle for examining the Board's decision. The trial court conducted a hearing on the Petition for Judicial Review. In fact, the Reasons for Judgment are entitled "Findings of the Court and Reasons for Judgment on Petition for Judicial Review." The Mannings' issues contained in their Amended and Supplemental Petition were pretermitted by the trial court because they were identical to the review petition. Additionally, the trial court only considered the record from the Board proceedings prior to entering judgment. Therefore, there were no concurrent hearings.
Accordingly, we find the trial court examined the correct evidence under the standard for a petition for judicial review of a PCF decision and did not conduct a hearing on the motion for summary judgment.

ASSIGNMENTS OF ERROR 4 & 5
Lastly, the PCF alleges the court manifestly erred in determining that Artiesha requires twenty-four hour per day LPN care, by finding the Mannings' care comparable to a LPN, and ordering compensation at the prevailing LPN rate.
The Board's exclusive jurisdiction is "subject only to court review of the agency's actions pursuant to well established principles of judicial review." Kelty v. Brumfield, 93-1142 (La.2/25/94); 633 So.2d 1210, 1218-1219. Specifically, the trial court's judicial review power of the Board's decision is governed by La. R.S. 49:964. The statute reads, in part:
G. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor *873 on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.
La. R.S. 49:964(G). "A reviewing court may reverse or modify a Board's decision if it is manifestly erroneous in view of the substantial evidence in the record." Elysian Fields, Inc. v. St. Martin, 600 So.2d 69, 72 (La.App. 4th Cir.1992). Similarly, in review of the trial court's judgment of the Board's decision, we owe deference to the factual findings of the trial court only to the extent that it did not commit manifest error. Bibbins v. City of New Orleans, 02-1510, p. 12 (La.App. 4 Cir. 5/21/03); 848 So.2d 686, 695, writ denied, 03-1802 (La.10/10/03); 855 So.2d 357. Therefore, if there are two permissible views of the evidence presented to the Board, the Board's decision must be affirmed.
The PCF claims the trial court committed manifest error by finding the Board's decision that Artiesha did not require twenty-four hour per day LPN care was arbitrary and manifestly erroneous. We agree.
Both parties agree that Artiesha requires twenty-four hour per day care. However, they disagree as to whether she requires custodial/sitter or LPN care. The Board reviewed the evidence presented at the hearing and determined that Artiesha did not require twenty-four hour LPN care. Predicated on the fact that her parents have always and continue to take full care of Artiesha without LPN training, the Board found Artiesha to have "adequate care to promote good health." In fact, Artiesha is thriving and is able to attend school. Additionally, the life-care plan, presented by the Mannings' non-primary care physician witness, stated that if nursing care should be required for Artiesha, then the nursing regulations would require an LPN. Clearly, it did not mandate LPN care. Further, the Mannings wish to keep administering Artiesha's care; thus, they do not wish to hire a LPN. As such, the Board determined that Artiesha did not require LPN care.
After a review of the record, we find this decision reasonable. The trial court substituted its own judgment in deciding that the Board's decision was manifestly erroneous. We find the Board's decision and judgment was based upon a reasonable view of the evidence. As such, the trial court's holding, which requires twenty-four hour LPN care, is manifestly erroneous and is reversed.
Next, the PCF asserts the trial court committed manifest error when it determined the compensation rate of the Mannings to be that of the prevailing LPN rate of their domicile. The Louisiana Administrative Code provides rules for compensating family members for custodial care. The prevailing rule states, in part:
2. However, notwithstanding the foregoing, future nursing or sitter care provided, after the effective date of the amended rules which provide for inflationary adjustments, by members of the patient's family or household will be funded at a rate not to exceed the equivalent of $6 per hour plus inflation at the annual consumer price index published by the United States Bureau of Labor Statistics for each year between the year of original publication of the rate (1993) and the date of service, regardless of the licensure or qualification of the provider. (Emphasis added).
LAC 37:III Chapter 19 § 1917(B). The rule is based on the presumption that the value of custodial care services provided by family members is different from that of third parties. However, the PCF conceded that this rule only provides guidelines *874 when determining reimbursement rates.
The Mannings urge this Court to follow our decision in Kelty v. Brumfield, XXXX-XXXX (La.App. 4 Cir. 3/12/97); 691 So.2d 242, in order to affirm the trial court's decision that they be compensated at the prevailing LPN rate. The Mannings assert that Kelty provides guidelines for courts to use to depart from the compensation requirements of 1917(B). The Kelty guidelines provide:
In order for a non-professional parent to make a claim for nursing services rendered, there must be a showing that there is a need for the services, the reasonableness of the fee must be established, and the extent and the duration must be proven.
Id. at 247. Considering these guidelines, the Board determined:
The claims made in the Mannings' affidavit raise many factual issues, but the Mannings are not relieved of the obligation to prove need, reasonableness, and duration in connection with their custodial care claim pursuant to Kelty.

Thus, after reviewing the evidence, the Board concluded that the Mannings "presented only legal issues," failed to meet the factual Kelty burden, and did not support their claims for an increase in the reimbursement rate. As such, the Board set a reimbursement rate of $6.26 per hour for custodial/sitter care.
Conversely, the trial court determined that Artiesha's medical conditions are "substantially similar" to the Kelty plaintiff and found the Board's decision manifestly erroneous. We disagree. While Kelty has some factual similarities to the case sub judice, it is distinguishable.
First, unlike the Kelty plaintiff, Artiesha is able to attend school from approximately 8:00 a.m. to 3:00 p.m. Second, the Board found the daily logs submitted by the Mannings to be "questionable in many respects as to their validity and accuracy." The daily logs are brief, vague and some appear to be identical copies of other dates. In fact, the logs appear to contradict assertions in the Mannings' affidavit that Artiesha never sleeps through the night because, according to the notes written by the Mannings, Artiesha does seem to sleep through the night. Third, the Mannings do not provide the same level of care as that in Kelty. According to the Mannings' affidavit, when Artiesha is not in school, they feed her breakfast, a snack, and dinner. They also change her diaper, move her limbs, bath her/brush her teeth, place her in front of the television, and put her in bed by 9:00 p.m., while occasionally checking her PEG tube. This type of care can be provided by a sitter. Maraist v. Alton Ochsner Medical Foundation, 02-2677, pp. 4-5 (La.App. 1 Cir. 5/26/04); 879 So.2d 815, 820. Accordingly, substantial evidence presented to the Board demonstrated a case dissimilar to Kelty.
After reviewing the testimony, evidence, and record, we find it was reasonable and not manifestly erroneous for the Board to find that LPN care was not required and that the Mannings' care was more comparable to that of a sitter.
As defined by the rules of judicial review, the trial court could not reverse the Board's decision absent manifest error. Accordingly, we find the trial court's application of Kelty to provide LPN compensation to the Mannings to be manifestly erroneous and, pursuant to La. R.S. 49:964(G), an abuse of discretion.
In sum, we find the trial court's decisions, regarding twenty-four hour care and the LPN reimbursement rate, to be manifestly erroneous and reverse their findings.

*875 CONCLUSION
For the foregoing reasons, we affirm in part, and reverse in part.
AFFIRMED IN PART; REVERSED IN PART.