982 So.2d 909 (2008)
CA ONE/PAMPY'S
v.
Shirley BROWN, et al.
No. 2007-CA-1377.
Court of Appeal of Louisiana, Fourth Circuit.
April 2, 2008.
*910 Joseph I. Giarrusso, III, Liskow & Lewis, and Roy J. Rodney, Jr., John K. Etter, Rodney Law Firm, LLC, New Orleans, LA, for Plaintiff/Appellee.
Louis R. Koerner, Jr., Koerner Law Firm, Houma, LA, for Defendants/Appellants.
*911 (Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge DENNIS R. BAGNERIS SR., Judge MAX N. TOBIAS, JR.)
MAX N. TOBIAS, JR., Judge.
Shirley Brown ("Brown") and S.B. Shirlee AMC Co., Inc. d/b/a Mrs. Burk's Kitchen ("Burk's") timely appeal an adverse judgment in favor of CA One/Pampy's ("Pampy's"), dismissing their action for nullity on a motion for summary judgment. After reviewing the record de novo, we affirm the trial court's judgment.
By agreement dated 8 July 1999, Pampy's was named the master concessionaire at the New Orleans International Airport. Pursuant to the terms of the concession agreement, Pampy's had the right to sublease locations in the airport to conduct food and business operations. On 6 September 2000, Pampy's exercised this right and together with Brown signed a Sublease Agreement ("Sublease") for Burk's to operate a food concession business at the airport. The Sublease specifically referenced and described the subleased premises as "Lot A." A map attached to and made a part of the Sublease Agreement identified the exact location of the subleased premises as "Taxi Lot A, Taxi Stand # 2."
In relevant part, the Sublease required:
§ 5.2 Burk's was obligated to pay each month's portion of the Minimum Annual Guarantee to Pampy's "in advance on the first day of each calendar month," in addition to eight percent of its Gross Concession Revenues "on or before the 10th of the following month" to the extent that the Gross Concession Revenues exceeded the Minimum Annual Guarantee for the month.
§ 5.6 Burk's had to report its gross concession revenues to Pampy's on or before the 10th day of each month.
§ 7.6 Burks' agreed to keep the subleased facility "in a neat, clean, safe, sanitary and orderly condition at all times."
§ 7.8(a) Burk's had "to use the Subleased Facility in accordance with all applicable federal, state and local laws."
§§ 8.2 and 8.3 Burk's was required to pay for electricity and other services within seven days of receiving an invoice.
§ 15.1 Events of Default. The following events shall be deemed to be events of default ("Events of Default") by Operator under this Agreement:
(a) Operator [Burk's] fails to pay Fees and Additional Fees to Concessionaire under Sections 5 [Fees] and/or 8 [Utilities and Services] hereof or any other sums due hereunder for a period exceeding three (3) days following receipt of written notice of default;
(b) Operator fails to completely and promptly comply with or observe or perform any other term, covenant or provision hereunder and fails to cure such default within twenty (20) days following receipt of written notice of any such default.
§ 15.2 Remedies afforded Pampy's in the event of default by Burk's:
Upon the occurrence of any Event of Default specified in the Agreement, in addition to any other remedies available at law, Concessionaire [Pampy's] shall have the option to pursue any one or more of the following remedies without any additional notice or demand whatsoever:
(a) Terminate this Agreement without discharging any of the Operator's [Burk's] obligations hereunder and exclude Operator [Burk's] from the Subleased Facility;
(b) Without terminating this Agreement, exclude Operator [Burk's] from *912 the Subleased Facility and use its best efforts to lease such Subleased Facility to another tenant for the account of the Operator . . .
(c) Terminate this Agreement, in which event the Concessionaire may repossess the Subleased Facility and be entitled to recovery, in addition to any sums or damages for which Operator may be liable to Concessionaire, as damages a sum of money equal to the excess of the value of the rent to be paid by Operator for the balance of the Term hereof over the fair market value . . .
§ 24 Standard "merger" clause, making the Sublease the final and binding agreement as between the parties. In short, the Sublease "constitutes the sole and exclusive agreement of the parties hereto and supersedes any prior understanding or arrangement, either verbal or otherwise, between [Pampy's] and [Burk's] concerning the Subleased Facility."
§ 28.8 Burk's agreed that in the event it defaulted, venue would be proper in New Orleans:
This Agreement shall be governed and construed pursuant to the laws of the State of Louisiana. All disputes between [Pampy's] and [Burk's] shall have jurisdiction in the State of Louisiana, and venue in Orleans Parish, Louisiana. The parties agree that said forum is the most convenient forum for the purposes of enforcing this Agreement.
The Sublease was approved by the New Orleans Aviation Board ("NOAB") on 6 September 2000, with an addendum specifically authorizing Pampy's, "upon the occurrence of any of the Events of Default described in the Sublease Agreement," to evict Burk's:
The Board further acknowledges that upon the occurrence of any of the events of Default described in the Sublease Agreement, Concessionaire [Pampy's] shall have the unilateral and unconditional right to terminate the Sublease Agreement and re-enter and repossess the Subleased Premises and thereafter operate same under the terms and conditions of the Concession Agreement, including compliance with DBE participation and provided that it pays the Board full Rent (provided for thereunder) with respect to Gross Sales generated thereafter as a result of such action.
The record establishes that, pursuant to the Sublease, Burk's began operating a food concession business on 27 January 2001, selling food to taxi cab drivers waiting for passengers at the airport. On 13 March 2001, Pampy's notified Burk's that, in contravention of the Sublease, its sales reports for the month of February 2001 were missing eight days of sales and that Burk's was not reporting vending machine sales. Then, on 22 March 2001, Pampy's notified Burk's that the Health Department had found significant violations at its concession facility, and advised that Burk's had ten days to take corrective action. These health code violations were, likewise, in contravention of the Sublease.
By letter dated 16 April 2001, Pampy's sent written notice to Burk's advising that its February 2001 rent check was returned by the bank due to insufficient funds, and that its March 2001 rent check was past due. The letter further alerted Burk's that if payment were not received within five days, it would be considered in default of the Sublease for nonpayment of rent and Pampy's would be forced to turn the matter over to its attorneys. Copies of this letter were sent to the NOAB's designated representatives and legal counsel.
A Rule to Evict Tenant was filed on 24 April 2001 by Pampy's against Brown and *913 Burk's, which was set for hearing on 27 April 2001. Pampy's asserted that Burk's was in default of the Sublease for nonpayment of rent, failure to submit the requisite monthly sales reports, and for violations of the Health and Safety Code. While Burk's was properly served with the rule, it made no appearance at the trial of the rule. In the absence of an opposition, the eviction order was granted by the trial court.
Burk's did not file any post-trial motions, post an appeal bond, or appeal the eviction order. Instead, nearly four months later, it filed an Exception, Answer, and Reconventional Demand. In response, Pampy's filed an exception of res judicata and a motion to strike the answer, which the trial court later granted.
On 29 November 2001, Brown and Burk's filed a petition to set aside the 27 April 2001 judgment of eviction pursuant to La. C.C.P. art. 2001, on the grounds that the judgment was procured by fraud and ill practices; the petition was timely answered by Pampy's. On 15 December 2001, Brown and Burk's filed an amended petition for nullity alleging additional grounds and requesting attorney's fees, which also was timely answered by Pampy's. Competing motions for summary judgment in the nullity action were filed by all parties in 2002 and 2003. Pampy's filed a renewed motion for summary judgment on 26 April 2007, with additional memoranda.[1]
A hearing on both motions was held on 27 July 2007 wherein the motion of Pampy's was granted, and Brown's and Burk's' motion was denied. It is from this adverse judgment dismissing the nullity action that Brown and Burk's appeal asserting the following errors: (1) the trial court erred when it did not set aside the 27 April 2001 judgment of eviction when the judgment was procured by fraud and ill practices, including "important misrepresentations" made during the eviction hearing and which misrepresentations were relied upon the trial court in making its determination; (2) the trial court erred in denying summary judgment to Burk's when given new evidence, including inculpatory documents from the NOAB; and (3) the trial court lacked subject matter jurisdiction and venue over the original eviction proceedings.
As the three assignments of error are integrally linked, we will address them together.
Summary Judgment on Action for Nullity Based on Fraud and Ill Practices
Appellate courts review motions for summary judgment de novo. La. C.C.P. art. 966. Moreover, in Louisiana, the party seeking to annul a judgment based on fraud or ill practices bears the burden of showing precisely how he was prevented or excused from asserting his claims or defenses. Green v. Neese, 99-3223, 99-3224, p. 3 (La.App. 4 Cir. 9/20/00), 769 So.2d 694, 696-697. In Green, we stated:
According to [La. C.C.P.] art. 2004, "ill practices" are defined as any improper practice or procedure which operates, even innocently, to deprive a litigant of some legal right. Morehead v. Ford Motor Co., 30,207 (La.App. 2 Cir. 2/25/98), 709 So.2d 861. (Emphasis added). The `legal right' of which a litigant must be deprived to have a judgment annulled has been defined as the opportunity to appear and assert a defense. Id. However, before the reviewing court can annul the judgment, it must examine *914 the case from an equitable viewpoint to determine whether the party seeking annulment has met the burden of showing `how he was prevented or excused' from asserting his claims or defenses. Foret v. Terrebone, Ltd., 93-676 (La. App. 5 Cir. 1/25/94), 631 So.2d 103; see also State v. Turner, 97-0396 (La.App. 4 Cir. 12/23/97), 705 So.2d 293.
Id. Louisiana jurisprudence sets forth two criteria for determining whether a judgment has been obtained by actionable fraud or ill practices: (1) the circumstances under which the judgment was rendered showed the deprivation of legal rights of the litigant seeking relief; and (2) the enforcement of the judgment would be unconscionable and inequitable. Power Marketing Direct, Inc. v. Foster, 05-2023, p. 12 (La.9/6/06), 938 So.2d 662, 670.
A. Deprivation of Legal Rights
The record reflects that Burk's was properly served with the Rule to Evict. The record further reflects that (a) Burk's presented no opposition to the eviction, (b) no one appeared at the hearing on its behalf,[2] (c) no continuance was requested, and (d) no exceptions were filed.
The record indicates that at the eviction hearing, Pampy's introduced into evidence the Sublease. Specifically, the Sublease required Burk's to timely pay rent, to submit monthly revenue reports, and to comply with the health code, the failure to do so would constitute an event of default. Additionally, the Sublease contained a merger clause stating that the Sublease was the final contract between the parties. In addition to submitting the Sublease into evidence, Pampy's offered the testimony of Joseph Taylor, its general manager; correspondence from Mr. Taylor to Burk's advising of the overdue rent; correspondence from Mr. Taylor to Burk's regarding the failed health inspection; and a copy of the March 2001 check issued by Burk's to Pampy's for February's rent that was returned due to insufficient funds. Based on the unopposed evidence introduced into the record during the eviction proceeding, the trial court granted the eviction order.
Following the signing of the eviction order and entry of judgment against Brown and Burk's, no motion for new trial pursuant to La. C.C.P. art. 1971 et seq. was filed, and neither defendant moved to alter or amend the judgment in accordance with La. C.C.P. art. 1951. No appeal challenging the 27 April 2007 judgment of eviction was sought. Based on the foregoing, we find that Burk's has failed to set forth the requisite proof that Pampy's or its counsel prevented Brown or Burk's from appearing and raising any applicable defenses at the eviction hearing or that any legal rights were denied. We further find that the appellate record indicates that any legal remedies of which Brown and Burk's were deprived were lost due to their own actions and/or inactions.
B. Unconscionability and Inequity of Enforcing the Judgment
Burk's contends that Pampy's made three "important misrepresentations" to the court during the eviction hearing, and that the eviction order was subsequently signed based on the trial court's reliance on these misrepresentations. Burk's further avers that had the court been privy to the facts, and certain documents that were later procured during discovery corroborating these facts, it would not have entered the eviction order. Therefore, Burk's argues that enforcing the judgment *915 of eviction would be unconscionable and inequitable.
1. Burk's was Evicted from the Taxi Lot Specified in the Sublease
According to Burk's, the first misrepresentation made was that the subleased premises from which Pampy's sought to have it evicted was not the premises to which the Sublease applied. We disagree that this was a misrepresentation. The Sublease defines the Subleased Facility as "Taxi Lot A" and includes a diagram of the airport that specifies the location occupied by Burk's as "Taxi Lot A, Taxi Stand #2." The fact that the Aviation Board, the Health Department, or others may have referred to the location occupied by Burk's as something other than Taxi Lot "A," cannot change the contract's definition and description of the Subleased Facility. See La. C.C. art. 2046. It is well settled that "a lease contract forms the law between the parties, defining their respective legal rights and obligations. The parties are bound by the agreement regardless of any harsh consequences contained in those agreements." See New Orleans Hat Attack v. New York Life Insurance Co., 95-0055, 95-0056, pp. 4-5 (La.App. 4 Cir. 11/30/95), 665 So.2d 1186, 1189.
By the express terms set forth in § 24, the Sublease "constitutes the sole and exclusive agreement of the parties hereto and supersedes any prior understanding or arrangement, either verbal or otherwise . . . concerning the Subleased Facility." When Shirley Brown, on behalf of Burk's, executed the Sublease that contained a diagram of the premises, which clearly identified the taxi lot subject to the Sublease, Burk's agreed to its conditions. Cf., New Orleans Hat Attack, 95-0055, 95-0056, pp. 4-5, 665 So.2d at 1189. Burks's' contention that it was "supposed to be" subleasing the other taxi lot does not, and cannot, alter the express terms of the Sublease and the attached map that Brown, on behalf of Burk's, reviewed and signed.
Pampy's petition for eviction and the testimony taken during the 27 April 2001 eviction hearing, consistently referred to the premises subleased by Burk's as "Taxi Lot A." The New Orleans International Taxi Lot Vicinity Map contained in the Sublease as Exhibit A unambiguously specifies the subleased location as "Taxi Lot A, Taxi Stand # 2"  the lot subleased to Burk's. Therefore, Pampy's reference to the location per the Sublease was accurate and, as a matter of law, does not constitute a fraud or ill practice warranting nullification of the trial court's judgment of eviction. Other than legal argument posited by counsel for Burk's, there has been no showing that Pampy's concealed or otherwise misrepresented the designation of the two taxi lots, or that it prevented Burk's from raising this as a defense during the eviction proceedings.
It is undisputed that Pampy's instituted eviction proceedings against Burk's for nonpayment of rent, for numerous violations of the Health Department's sanitary regulations, and for failing to follow proper accounting procedures as set forth in the Sublease. We find that these breaches of the Sublease were sufficient to warrant the eviction of Burk's, regardless of whether it operated its concessions in Lot "A" or Lot "B." In Louisiana, an alleged fraud or ill practice that pertains to a matter that is irrelevant to the basis of the decision is not grounds for nullifying the judgment. See Belle Pass Terminal, Inc. v. Jolin, Inc., 01-0149, p. 7 (La.10/16/01), 800 So.2d 762, 767.
2. Pampy's had Authority Under the Sublease Agreement to Proceed With Eviction
Burk's contends that Pampy's was without authority to institute eviction proceedings *916 because it failed to obtain prior written approval of the NOAB as purportedly required by the terms of the Master Lease between the NOAB and Pampy's.[3] In support of its position, Burk's relies upon a letter written by Rebecca King, counsel for the NOAB, to Joseph Taylor, general manager of Pampy's, dated 5 July 2000, where, in addition to informing of the NOAB's approval of the Sublease, Ms. King advised that prior written approval of the NOAB was required before Pampy's could enforce Article 15 (default and remedies provision) of the Sublease. Pampy's contends the views expressed by Ms. King in the above referenced letter were done so without authority and were, nonetheless, superseded on 6 September 2000, when retired Justice Revius O. Ortique, Jr. signed the Sublease on behalf of the NOAB, which approval specifically provided Pampy's with the "unilateral and unconditional right to terminate the Sublease Agreement and reenter and repossess the Subleased Premises."
The language contained in § 15.2 of the Sublease, in addition to the addendum, specifically authorizes Pampy's to evict Burk's in the event of default. It is undisputed that Burk's failed to pay rent, failed to utilize proper accounting procedures, and failed to comply with health regulations; each default triggered Pampy's right to seek eviction. Burk's' reliance on Mrs. King's letter as evidence that Pampy's lacked the requisite authority is misplaced, and after reviewing the applicable provisions of the Sublease and its addendum, we find was written in error and in derogation of the express terms of the Sublease. Therefore, it has no bearing or effect on the eviction proceedings.
3. Subject Matter Jurisdiction and Venue Over the Eviction Action was Proper in Orleans Parish
Brown and Burk's contend that because Brown was domiciled in Jefferson Parish and because Burk's was physically situated at the airport located in Jefferson Parish, the Orleans Parish Civil District Court lacked jurisdiction and venue "over property in another parish." We disagree.
La. C.C.P. art. 4841 A provides, in pertinent part, that "[t]he subject matter jurisdiction of . . . city courts is limited by the amount in dispute and by the nature of the proceeding . . ." Additionally, La. C.C.P. art. 4844 A(3) provides:
A. A parish or court of city court shall have jurisdiction, concurrent with the district court, over suits by owners and landlords for the possession of leased premises as follows:
(3) When the lease is by month and the monthly rental is three thousand dollars or less.
The sole relief sought by Pampy's Rule to Evict Tenant was the eviction of Burk's from the premises on the basis of default of the Sublease. The record establishes that the rent paid by Burk's was less than $3,000.00 per month. Consequently, in this matter, the district court shared concurrent jurisdiction with the city court over the eviction proceeding. See Home Distribution, Inc. v. Dollar Amusement, Inc., 98-1692, p. 7 (La.App. 1 Cir. 9/24/99), 754 So.2d 1057, 1061 (Where the sole demand of the suit is to evict the defendant *917 from certain premises, jurisdiction is determined solely by the rent paid for the premises or its fair rental value); see also Bennett v. Hughes, 03-1727, p. 8 (La.App. 4 Cir. 5/26/04), 876 So.2d 862, 867.
Regarding venue, § 28.9 contains a specific forum selection provision, which provides:
This Agreement shall be governed and construed pursuant to the laws of the State of Louisiana. All disputes between [Pampy's] and [Burk's] shall have jurisdiction in the State of Louisiana, and venue in Orleans Parish, Louisiana. The parties agree that said forum is the most convenient forum for the purposes of enforcing this Agreement.
In the case sub judice, Pampy's and Burk's entered into the Sublease wherein they both clearly intended and agreed that Orleans Parish would be the proper venue for "[a]ll disputes" arising out of the Sublease. Contracts have the effect of law for the parties. La. C.C. art. 1971. Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045.
Generally, forum selection clauses are legal and binding in Louisiana, except as specifically prohibited by law, and are prima facia valid. Further, they should be enforced unless the resisting party clearly proves that enforcement would be unreasonable and unjust, or that enforcement would contravene a strong public policy for the forum where the suit is brought. See Pique'-Weinstein-Pique' Architects, Inc. v. New Orleans Aviation Board, 99-1231, p. 4 (La.App. 5 Cir. 4/25/00), 762 So.2d 76, 78. A party seeking to set aside a forum selection clause bears a heavy burden. Digital Enterprises, Inc. v. Arch Telecom, Inc., 95-30, p. 1 (La.App. 5 Cir. 6/28/95), 658 So.2d 20. We find nothing in the Louisiana Code of Civil Procedure or the jurisprudence that specifically prohibits parties to a lease from agreeing to a specific venue. In the case at bar, Pampy's and Burk's specifically agreed that Orleans Parish would be the proper and most convenient venue for all disputes arising out of the Sublease, which would include eviction proceedings. We find that the venue selection clause agreed to by the parties is legal and binding. We further find that enforcement of the venue selection provision is reasonable and just under the facts before us.
We further find that, even if venue in this matter would have been proper in a parish other than Orleans, this jurisdictional issue was waived by Burk's when it filed its Answer without filing the proper declinatory exception of improper venue. See La. C.C.P. arts. 925 C and 928 A. Moreover, by later filing the Petition to Set Aside Judgment of Eviction and subsequent pleadings, Brown and Burk's waived any other objection they may have had to venue in Orleans Parish. See Manning v. United Medical Corp. of New Orleans, 04-0310, pp. 5-6 (La.App. 4 Cir. 3/2/05), 897 So.2d 867, 871-72. Accordingly, we find the district court in Orleans Parish had both subject matter jurisdiction and venue over the eviction proceedings.

CONCLUSION
We conclude that Brown and Burk's have failed to prove that Pampy's or its counsel, prevented Brown and/or Burk's from appearing and raising defenses at the eviction hearing or that legal rights were denied. The appellate record indicates that any legal remedies of which Burk's was deprived were lost due to its own actions and/or inactions. Moreover, Burk's has failed to establish that enforcement of the eviction judgment was unconscionable or inequitable under the circumstances presented. Subject matter jurisdiction and venue were proper in Orleans *918 Parish. For the reasons stated, we find that Burk's cannot sustain its burden of proof substantiating its claim for nullity and, consequently, the trial court's dismissal of the action on summary judgment was proper.
AFFIRMED.
NOTES
[1] Before the cross motions for summary judgment on the petition for nullity could be heard, Brown died. On 7 May 2007, heirs moved to be substituted as parties for Brown. An order granting substitution was issued on 13 July 2007.
[2] According to Burk's, due to a "scheduling conflict," its counsel, who had not made an appearance, "did not appear at the rule for eviction."
[3] Brown and Burk's also contend that, because Brown was not a party to the contract between Pampy's and Burk's, and did not sign or guarantee it personally, Pampy's should not have made Brown a defendant in the action, nor should the eviction judgment have been rendered against her individually. We find, however, that although Brown may not have been a proper party to the eviction proceedings, in failing to defend, except, or otherwise timely appeal the judgment of eviction, she has acquiesced in its execution.