999 So.2d 66 (2008)
ASI MANAGEMENT, L.L.C.
v.
ADVANTAGE FORD, INC.
No. 2008-CA-0255.
Court of Appeal of Louisiana, Fourth Circuit.
November 19, 2008.
*67 Vallerie Oxner, Metairie, LA, for Plaintiff/Appellee, ASI Management, LLC.
William H. Eckert, Rhonda J. Thomas, Ungarino & Eckert L.L.C., Metairie, LA, for Defendant/Appellant, Advantage Ford, Inc.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY, Judge ROLAND L. BELSOME).
ROLAND L. BELSOME, Judge.
Defendant-Appellant Advantage Ford, Inc. ("Ford") appeals the trial court's judgment awarding damages to Plaintiff-Appellee ASI Management, LLC ("ASI"). For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
On October 11, 2006, ASI brought a 2004 Ford F-150 truck that it owned to Advantage Ford for a "tune-up."[1] While the vehicle was being serviced by Ford, an employee of Ford broke three spark plugs, subsequently causing damage to the engine and disabling the vehicle's computer and security systems. Ford unsuccessfully attempted to fix the damage to the vehicle. ASI had the vehicle towed to three other repair shops in an effort to repair the engine, but none were able to start the vehicle or attempt repairs because the computer systems were disabled.[2]
On September 17, 2007, counsel for ASI issued correspondence directly to Advantage *68 Ford demanding compensation for the damages to the truck.[3] In response, counsel for ASI received a letter from counsel for Advantage Ford, John Cutrera, Jr., dated October 3, 2007, acknowledging the demand letter received by Advantage Ford. Counsel for Ford denied that ASI's vehicle was "running fine" when it was received by Ford; stated that spark plugs "routinely break off" when they are seized in the engine; admitted that three spark plugs had broken off while the vehicle was being repaired by Ford, but denied that Ford caused the plugs to seize in the engine, and asserted that Ford was therefore not liable to ASI for any damage.
Thereafter, on October 5, 2007, ASI filed suit in First City Court, requesting service upon Ford's registered agent. A review of the record evidences that Ford's registered agent in New Orleans was personally served on October 17, 2007. After a hearing, a default judgment in favor of ASI was signed on December 11, 2007 in the amount of $16,616.06, together with costs and legal interest from the date of demand. It is from this judgment that Ford appeals.

DISCUSSION
In its sole assignment of error, Ford argues that the trial court erroneously granted the default judgment because Ford had insufficient opportunity to answer or defend the claims due to ill practices by counsel for ASI. Ford submits that the ill practices by counsel for ASI consisted of: 1) the failure to notify counsel for Ford of the filing of the petition or the hearing on the default judgment, and 2) the taking of the default judgment itself.
Ford further argues that ASI's alleged ill practices in obtaining the default judgment are a basis for annulling the judgment pursuant to La.Code Civ. Proc. art.2004. As the party seeking the annulment of a judgment based upon ill practices, Ford bears the burden of demonstrating how Ford was excused or prevented from asserting its claims or defenses. CA One/Pampy's v. Brown, et al, 07-1377, p. 6 (La.App. 4 Cir. 4/2/08), 982 So.2d 909, 913 (citing Green v. Neese, 99-3223, 99-3224, p. 3 (La.App. 4 Cir. 9/20/00), 769 So.2d 694, 696-7). The criteria for determining whether a judgment has been obtained by ill practices are: 1) whether the circumstances under which the judgment was rendered evidenced the deprivation of legal rights of the litigant seeking relief; and 2) whether the enforcement of the judgment would be inequitable and unconscionable. Brown, 07-1377, p. 6-7, 982 So.2d at 914 (citing Power Marketing Direct, Inc. v. Foster, 05-2023, p. 12 (La.9/6/06), 938 So.2d 662, 670). Additionally, a trial court has discretion in deciding whether a judgment should be annulled due to fraud or ill practices, to which discretion a reviewing court will defer. Foster, 05-2023, p. 10, 938 So.2d at 669.
In this case, Ford does not dispute that its registered agent was personally served with ASI's petition. Rather, Ford asserts that notice of the lawsuit and default judgment should also have been provided to Mr. Cutrera in addition to the registered agent. Accordingly, this Court must determine whether, by serving Ford's registered agent, ASI deprived Ford of some legal right, and whether enforcement of the judgment would be unconscionable or *69 inequitable. See Brown, supra; Neese, supra.
The Louisiana Code of Civil Procedure provides that service on a domestic or foreign corporation is made by personal service on any of its agents for service of process. La.Code Civ. Proc. art. 1261(A). Thus, counsel for ASI complied with the service requirements mandated by the Code of Civil Procedure. Ford maintains, however, that pursuant to Louisiana jurisprudence, even though service was proper, the default judgment should nonetheless be annulled because it was obtained by ill practices. In support, Ford relies in part on Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1070 (La.1983). In Kem Search, the defendant, David Sheffield, was served with a copy of the petition and subsequently spoke with counsel for Kem Search over the telephone regarding the suit. Kem Search, 434 So.2d at 1069. Following the telephone conversation, Sheffield issued correspondence to counsel for Kem Search, confirming the conversation wherein counsel for Kem Search agreed to allow Sheffield additional time to obtain counsel and file responsive pleadings. Id. Sheffield further stated in the letter that he wished to discuss the matter in person and potentially reach an amicable settlement. Id.
Shortly thereafter, counsel for Kem Search responded to Sheffield's letter, in which the Court noted a willingness to discuss settlement was indicated, in addition to the following remark: "If you wish to discuss this matter[,] feel free to give me a call." Id. Approximately a month later, without informing Sheffield, counsel for Kem Search entered a preliminary default,[4] and then ultimately confirmed the preliminary default, again without notifying Sheffield. Id. The Louisiana Supreme Court concluded that Sheffield was unfairly deprived of an opportunity to present his defenses and lost legal rights. Id. at 1071. The Court noted that although Sheffield could have acted more prudently to protect his rights by filing responsive pleadings, enforcement of the judgment would be unconscionable "because Sheffield failed to act due to his mistaken and not unreasonable impression that Kem Search's attorney would give him an opportunity to file pleadings if his settlement overtures were rejected." Id. The Court further stated that "[t]he communications between Sheffield and the Kem Search attorney provide a basis for a reasonable belief that Sheffield, an attorney, would be given such notice." Id. The facts in the instant case are plainly distinguishable from the circumstances in Kem Search, in which numerous communications were made and the potential for settlement was discussed. We therefore find Ford's reliance on Kem Search to be misplaced.
Ford also cites Russell v. Illinois Central Gulf Railroad, 96-2649 (La.1/10/97), 686 So.2d 817, in support of its argument. In Russell, the Louisiana Supreme Court annulled a default judgment, finding that although the Code of Civil Procedure does not mandate that a party must attempt to notify opposing counsel of intent to seek a default judgment, the failure of plaintiff's counsel to do so in an ongoing petitory action constituted an ill practice pursuant to La.Code Civ. Proc. art.2004. Russell, *70 686 So.2d at 819. Specifically, the Court noted that the opposing counsel had participated in the litigation proceedings, including prevailing on an exception of vagueness, and inadvertently failed to answer the second amended petition.[5]Id.
Thus, the Court in Russell found that the failure to notify opposing counsel who had participated in litigation proceedings prior to obtaining a default judgment was an ill practice, "even in the absence of any mandatory notification requirement and even though service of process was properly effected." Foster, supra, 938 So.2d at 672 (citing Russell, 686 So.2d at 819). Considering the facts and circumstances of the instant case, we find that Ford's reliance on Russell is misplaced. The actions of counsel in Russell, who actually participated in litigation proceedings, stand in stark contrast to the sole denial letter written by Mr. Cutrera in this case.
Finally, Ford cites Firmature v. Tommasi, 533 So.2d 1326 (La.App. 3 Cir.1988), for the proposition that counsel for ASI's failure to inform the court that she had received Mr. Cutrera's denial letter constituted an ill practice. In Firmature, the plaintiff sued Tommasi for injuries resulting from a tort, and Tommasi was legally served. Firmature, 533 So.2d at 1326-27. Tommasi brought the petition to his attorney, who ultimately failed to file an answer or other responsive pleadings in the matter. Id. at 1327. A preliminary default was entered seven months later, and Tommasi was served with notice of the judgment after the confirmation hearing. Id. The trial court subsequently declared the default judgment a nullity.
On appeal, the Court reversed the trial court's judgment and reinstated the confirmation of the default judgment. Id. at 1328. The Court contrasted the facts with the scenario in Kem Search, supra, and found that plaintiff's counsel had not committed any improper practice or procedure, as there was no communication between counsel, and thus nothing upon which Tommasi or his counsel could have reasonably relied as an assurance to provide notice before taking a default judgment. Id. Additionally, the Court cited the Louisiana Supreme Court's decision in Johnson v. Welsh, which held that failure of the defendant's counsel to respond to the petition or make an appearance on his behalf did not constitute grounds upon which a judgment of default could be set aside. Id. (citing Johnson v. Welsh, 334 So.2d 395[, 397] (La.1976)). The Court ultimately held that "[a]bsent an agreement, express or implied, by the plaintiff's attorney, confirming a default without prior notice to opposing counsel is not an ill practice."[6]Id.
Because we find the Louisiana Supreme Court's reasoning in Russell, supra, and Foster[7], supra, persuasive, "the question *71 becomes whether the defaulting defendant, [Ford], participated in the litigation proceedings and actively attempted to defend its rights so that the lack of notice of [ASI]'s intent to take a default judgment against it constitutes an improper procedure which operated, even innocently, to deprive [Ford] of some legal right and where the enforcement of the default judgment would be unconscionable and inequitable."[8]Foster, 938 So.2d at 673. We cannot say, under these facts and circumstances, that Mr. Cutrera's letter denying liability constituted an active participation in the litigation proceedings as contemplated by Foster, supra, such that the lack of notice to Mr. Cutrera, in addition to Ford's registered agent, of ASI's intent to seek and confirm a default judgment against Ford constituted an ill practice. Nor were there any assurances upon which Mr. Cutrera could reasonably believe an agreement existed whereby ASI would provide notice to Mr. Cutrera of any action taken on the lawsuit against Ford. Id. at 674. Therefore, we conclude that in this particular case, ASI's service of the petition on Ford's registered agent for service of process without providing additional notice to Mr. Cutrera did not constitute an ill practice or deprive Ford of some legal right.[9]
*72 We now turn to the issue of whether enforcement of the judgment in this case would be unconscionable and inequitable. As previously noted, ASI properly served Ford's registered agent with both the petition for damages and notice of the default judgment hearing, in full compliance with the requirements for service of process on a corporation pursuant to La.Code Civ. Proc. art. 1261(A). Additionally, we find no evidence in the record of any misrepresentation by ASI to Ford or Mr. Cutrera. Mr. Cutrera responded to ASI's demand letter to Ford by flatly denying liability for any damages to ASI's vehicle; no offer was extended to discuss the matter further, nor were any ongoing negotiations taking place between counsel for ASI and Mr. Cutrera. The denial letter was the sole communication between Mr. Cutrera and counsel for ASI. It is undisputed that no agreement existed, express or implied, whereby counsel for ASI would notify Mr. Cutrera before seeking a default judgment. Moreover, the facts and circumstances of this case are plainly distinguishable from Kem Search, supra, and Russell, supra. Therefore, pursuant to the aforementioned jurisprudence and the plain language of La.Code Civ. Proc. art. 1261(A), we cannot conclude that enforcement of the judgment in this particular case would be unconscionable or inequitable.

CONCLUSION
For the foregoing reasons, we find that Appellant's assignment of error lacks merit. The judgment of the trial court is hereby affirmed.
AFFIRMED.
NOTES
[1] ASI submits that the vehicle was taken to Ford on October 11, 2006, where it remained for several days; however, Ford maintains in its brief that the vehicle was brought to the shop on October 17, 2006. Although the record contains a work order from Advantage Ford dated October 17, 2006, a review of the exhibits reveals a repair order from Advantage Ford dated October 11, 2006.
[2] George Craig Gambino, president and owner of ASI Management, LLC, testified at the default judgment hearing that after Advantage Ford was unable to repair the vehicle, the vehicle was towed to Gabe's Auto Repair, Don Bohn Ford, and Crescent Ford Trucks.
[3] Although a copy of the September 17, 2007 demand letter from counsel for ASI to Advantage Ford is not contained in the record, Ford submits in its brief that the letter was sent directly to Advantage Ford, as evidenced by reference in Mr. Cutrera's denial letter to counsel for ASI.
[4] In Sheffield's letter confirming the telephone conversation with counsel for Kem Search, he mentioned that an attorney named Walter Krousel would likely be representing him. Kem Search, 434 So.2d at 1068. After entering the preliminary default but before confirmation, counsel for Kem Search called Krousel to inquire whether he would represent Sheffield in the case, to which Krousel responded he had not yet been contacted by Sheffield. Id. Counsel for Kem Search proceeded with the confirmation of the preliminary default with no further communication with Sheffield or Krousel. Id.
[5] The Court further noted that a petitory action "involves the acquisition of property rights in which the litigants intend to assert their respective rights to the property involved," and that in this case, the defendants were "actively attempting to defend their property rights." Russell, 686 So.2d at 819.
[6] The court also noted that the taking of a default judgment in and of itself is not an ill practice. Firmature, supra (citing La.Code Civ. Proc. arts. 1701, 1702).
[7] The Louisiana Supreme Court in Foster held that the confirmation of the default judgment without prior notice to Power Marketing by Foster constituted an ill practice because Foster was aware that Power Marketing had no knowledge of the suit, as Power Marketing's agent refused service, and Power Marketing was actively defending and prosecuting its rights in a similar suit in Ohio. The Court also noted that the suit filed in Louisiana was in clear violation of the parties' forum selection clause in the licensing agreement, which designated Ohio as the law and forum, and to which Foster acknowledged and agreed.
[8] Notably, this Court has recognized that "knowledge that the defendant has legal representation is not the standard for overturning a default." Gresham v. Production Management, Inc., XXXX-XXXX, p. 6 (La.App. 4 Cir. 2/11/04), 868 So.2d 171, 176. This Court, acknowledging that opposing counsel had not made an appearance of record pursuant to La. C.C.P. art. 1702(A), stated, "[t]he mere fact that a plaintiff may have knowledge that a defendant has representation is not sufficient to require notice of default." Id. The facts of Gresham, however, are inapposite to the instant case. In Gresham, a defendant was personally served with a supplemental and amending petition, and he subsequently hired an attorney, who failed to answer the suit or file other pleadings into the record. Id. After several months had passed, plaintiff's counsel faxed opposing counsel a letter stating that all extensions of time in which to plead were to expire and a default would be taken if no answer were filed by the expiration date. Id. at 174. Again, plaintiff's counsel notified opposing counsel via facsimile that a preliminary default had been entered, but counsel failed to respond, and the default judgment against the defendant was ultimately confirmed. Id. This Court affirmed the default judgment, concluding that because counsel for defendant took no actions that constituted an appearance of record, plaintiff's counsel was under no obligation to notify him of his intent to confirm the preliminary default. Id. at 177.
[9] Ford also cites two First Circuit cases in support of its position: LeBlanc v. R & R Harris, Inc., 2006 WL 3109616, Not Reported in So.2d, XXXX-XXXX (La.App. 1 Cir. 11/3/06, 941 So.2d 198) and Forman v. Belew, 536 So.2d 821 (La.App. 1 Cir. 12/20/88). Both cases are distinguishable. In LeBlanc, the Court dismissed an appeal of a default judgment, noting that the correct procedural vehicle to challenge a default judgment is an action for nullity.

In Forman, the Court affirmed a trial court's annulment of a preliminary default judgment against Joe Belew; however, in that case, as in Russell, supra, exceptions had been filed by counsel for Belew. Additionally, counsel for Joe Belew testified that he had been in communication with Mr. Forman, and that at no time was he given an indication that an answer needed to be filed. Noting that "[o]rdinarily, confirming a default without prior notice to the opposing counsel is not an ill practice under LSA-C.C.P. article 2004 unless plaintiff's attorney agrees to give his opponent notice before taking the default or leads him to believe notice will be given by pretending to negotiate a settlement," the Court held that the trial court was not erroneous in determining that counsel for Joe Belew had reason to believe that the parties agreed no default judgment would be taken without prior notice. Forman, 536 So.2d at 823 (emphasis added).